Ronnie **BROWN**, Michael **Tomlin** and Minnie **Donovan**, Plaintiffs–Respondents,

v.

Lewis E. **MELAHN**, Director, Division of Insurance, Defendant–Appellant.

No. 59581.

Missouri Court of Appeals, Eastern District, En Banc.

Jan. 28, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 9, 1992.

Application to Transfer Denied April 21, 1992.

Mark W. Stahlhuth, Gen. Counsel, Missouri Div. of Ins., Jefferson City, for defendant-appellant.

John P. Lichtenegger, Paul Roger Ellis, Lichtenegger, Payne & Weiss, Jackson, for plaintiffs-respondents.

Carole Olson Gates, Kansas City, for amicus curiae Nat. Ass'n of Ins. Com'rs.

SMITH, Judge.

Plaintiffs, Ronnie Brown, Michael Tomlin and Minnie Donovan, who are licensed insurance agents in the State of Missouri and are actively engaged in selling Medicare

supplement policies, sued to obtain a declaratory judgment and injunction.[1] They alleged that the Missouri Director of the Division of Insurance exceeded his authority in promulgating certain regulations. The trial court determined that the regulations at issue were ultra vires and invalid. It, therefore, permanently restrained and enjoined the Director from enforcing them. From this order the Director appeals.[2]

■ In reviewing the judgment of the trial court in a declaratory judgment action, this court will sustain the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Harold S. Schwartz & Assocs., Inc. v. Continental Casualty Co.,* 705 S.W.2d 494, 497 (Mo. App.1985). There is no factual dispute here. We, therefore, accord no deference to the trial court in determining whether the declaratory judgment is correct as a matter of law. *State ex rel. Kirkpatrick v. Board of Election Comm'rs.,* 686 S.W.2d 888, 892 (Mo.App.1985).

On November 22, 1989, the United States Congress enacted the Medicare Catastrophic Coverage Repeal Act of 1989, Pub.L. 101–234 (MCCRA). It was subsequently signed into law by President Bush on December 13, 1989. Among other things, the MCCRA amended 42 U.S.C. § 1395ss to allow the National Association of Insurance Commissioners (NAIC) ninety days from December 13, 1989, to revise the amended NAIC model regulation relating to medicare supplement insurance. In addition, MCCRA required each state to adopt standards equal to, or more stringent than, the revised NAIC model regulation no later than one year after the date the NAIC adopted its revised regulation. Pub.L. 101–234, Section 203(a)(1)(C). Failure of the state to adopt such standards would result in a finding that the state regulatory program did not meet the requirements for state, rather than federal,

control of medicare supplement insurance regulation. *Id.*

The NAIC revised its model regulation, "Model Regulation to Implement the NAIC Medicare Supplement Insurance Minimum Standards Model Act," on December 7, 1989. At the same time, the NAIC revised its model law on medicare supplement insurance, in relation to permissible compensation arrangements, in an effort to expand the scope of rulemaking authority. It states: "[t]he commissioner shall issue reasonable regulations to establish minimum standards for benefits, claims payment, marketing practices and compensation arrangements and reporting practices, for Medicare supplement policies."

Thereafter, the Missouri General Assembly amended its law relating to Medicare supplement insurance. As a result, Section 376.869, RSMo Cum.Supp.1990, states: [t]he director shall issue reasonable regulations to establish minimum standards for benefits, claims payment, marketing practices, compensation arrangements and reporting practices for medicare supplement policies." Pursuant to this rulemaking authority, the Director promulgated 4 CSR 190–14.625, "Medicare Supplement Insurance Minimum Standards," effective December 31, 1990. This regulation contains language substantially similar to Section 12 of the NAIC model regulation.

Plaintiffs filed this action for declaratory judgment and injunction challenging the validity of 4 CSR 190–14.625(10)(A), (B), (C) and (E) which relate to permitted compensation arrangements for insurance agents or representatives for the sale or servicing of medicare supplement policies. Those sections read as follows:

(10) Permitted Compensation Arrangements

    (A) An insurer or other entity may provide commission or other compensation to an agent or other representative for the sale of a Medicare supplement policy or certificate only if the

---

1. Portions of this opinion are taken without further attribution from the divisional opinion of Stephan, J.

2. We acknowledge that the National Association of Insurance Commissioners filed an amicus curiae brief in support of the Director's position.

first year commission or other first year compensation is no more than two hundred percent (200%) of the commission or other compensation paid for selling or servicing the policy or certificate in the second year or period.

(B) The commission or other compensation provided in subsequent (renewal) years must be the same as that provided in the second year or period and must be provided for no less than three (3) renewal years.

(C) No entity shall provide compensation to its agents or other producers and no agent or producer shall receive compensation greater than the renewal compensation payable by the replacing insurer on renewal policies or certificates if an existing policy or certificate is replaced unless benefits of the new policy or certificate are clearly and substantially greater than the benefits under the replaced policy.

*　*　*　*　*　*

(E) For purposes of this section, compensation includes pecuniary or nonpecuniary remuneration of any kind relating to the sale or renewal of the policy or certificate including, but not limited to, bonuses, gifts, prizes, awards and finders' fees.

Plaintiffs asserted that the Director is only empowered to establish "minimum" standards for compensation arrangements, but that these sections placed "maximum" limits on their compensation arrangements.

Pursuant to Rule 92.02(a), the parties agreed to consolidate the action on the merits by having both the hearing on the application for preliminary injunction and permanent injunction at the same time. The trial court entered its order finding that paragraphs (10)(A), (10)(B) and (10)(E) of 4 CSR 190–14.625 set forth maximum standards of compensation for insurance agents, and that the Director, therefore, exceeded his authority in promulgating them. The trial court also found that paragraph (10)(C) was valid. Thus, the Director was enjoined from enforcing 4 CSR 190–14.625(10)(A), (B) and (E).

The Director raises three points on appeal. All three points raise essentially the same argument—that the trial court erred in entering its decree and judgment that the standards of compensation set forth in 4 CSR 190–14.625(10)(A), (B) and (E) are maximum standards and exceed the statutory authority given the Director.

■ Regulations may be promulgated only to the extent of and within the delegated authority of the enabling statute. *Osage Outdoor Advertising v. State Highway Commission,* 624 S.W.2d 535, 537 (Mo.App.1981). Rules are void if they are beyond the scope of the legislative authority conferred upon the state agency or if they attempt to expand or modify the statutes. *Missouri Hospital Ass'n. v. Missouri Dept. of Consumer Affairs,* 731 S.W.2d 262, 264 (Mo.App.1987). Rules and regulations must be sustained unless unreasonable and plainly inconsistent with the act; they are not to be overruled except for weighty reasons. *Foremost–McKesson, Inc. v. Davis,* 488 S.W.2d 193, 197 (Mo. banc 1972).

The enabling act, Section 376.869 RSMo Cum.Supp.1990, provides "[t]he director shall issue reasonable regulations to establish *minimum standards* for benefits, claims payment, marketing practices, *compensation arrangements* and reporting practices for medicare supplement policies." (Emphasis ours). The 1990 amendment substituted the words "claims payment, marketing practices, compensation arrangements and reporting practices for" for "and claims payment under".

■ When a court construes a statute, it does so in light of the purposes the legislature intended to accomplish and the evils it intended to cure. *In the Interest of A.M.B.,* 738 S.W.2d 128, 130 (Mo.App.1987). Words used in statutes are normally given their plain and ordinary meanings. *Moyer v. Walker,* 771 S.W.2d 363, 368 (Mo.App. 1989). The legislature is presumed to have intended what the statute says and if the language is clear and unambiguous there is no room for construction. We give effect to the statute as it is written and presume the legislature intended a logical result.

*State ex rel. LeBeau v. Kelly,* 697 S.W.2d 312, 315 (Mo.App.1985).

The legislature amended Section 376.869 RSMo Cum.Supp.1990, to conform with the NAIC model act. It is argued, both by the Director and the NAIC, that the NAIC interpretation and intention should be adopted, citing *State v. Anderson,* 515 S.W.2d 534, 539 (Mo. banc 1974) (adopting part of the model penal code means that the legislature adopted the interpretation placed thereon in the commentary by the drafters). They argue that this provision of the model act was written for the purpose of expanding the rulemaker's authority. The drafters recognized, however, that some states would not need to strengthen the rulemaking authority so the following drafting note was included: "[e]ach state should examine its statutory authority to promulgate regulations and revise this section accordingly so that sufficient rulemaking authority is present and that unnecessary duplication of unfair practice provisions does not occur."

■ We agree that the intent of the NAIC and the legislature was to strengthen the Director's rulemaking authority. The Director's authority is, however, still limited; it is not total. Here, pursuant to the enabling act, the Director may only promulgate regulations which establish minimum standards of compensation arrangements, etc. We now look to the challenged regulations to see if they establish minimum standards of compensation arrangements. If possible, the regulations will be construed to avoid unjust or unreasonable results and in a way which will give effect to the legislative intent. *St. Louis Police Officers' Ass'n. v. Sayad,* 685 S.W.2d 913, 918 (Mo.App.1984).

"Minimum" is defined as "[t]he least quantity assignable, admissible or possible in [a] given case and is opposed to maximum." *Black's Law Dictionary* 995 (6th ed. 1990). "Maximum" is defined as "[t]he highest or greatest amount, quality, value or degree." *Black's Law Dictionary* 979 (6th ed. 1990).

There is little doubt from the legislative history previously set forth that the intent of the general assembly was to preserve to the state the control of the sale of medicare supplement insurance policies within the state rather than have that control exercised by the federal government. It therefore sought to provide the Director with the authority to promulgate regulations at least equal to the standards established by the NAIC. We must approach the statute and the regulations from that viewpoint. The language utilized by the general assembly is the establishment of "minimum standards for ... compensation arrangements ..." The word "minimum" modifies "standards" not "compensation arrangements". The statute authorizes regulations which create standards for the establishment of compensation arrangements.

■ The purpose of the provisions in question is to prevent "twisting". That term refers to the practice of selling replacement policies for no other reason than to receive a first-year commission for the sale of a new policy. The evidence at the hearing established that the first year commissions prior to the regulations ran in the area of 55 to 70% of the premium. The renewal commissions standardly ran approximately 10 to 15% of the premium. Clearly such a dichotomy in the return to the agent gives a substantial incentive to unscrupulous agents to "twist". The regulations of the Director and NAIC do not restrict the amount of the first year commission that the agent can earn. They establish only a ratio between the first year commission and the subsequent renewal commissions. The renewal commissions must be at least 50% of the first year commission, and must remain at that level for at least three renewal years. To the extent the compensation of the agent is restricted it is because of the market conditions not the language of the regulations. Insurance companies are free, if the market allows and they desire to do so, to provide the same amount of commissions for the first year as they previously did.[3]

3. Evidence at trial indicated that the total income to the agent from individual policies at

The regulations do not establish maximum compensation that agents may receive. They establish a minimum standard of the relationship between first year commissions and renewal commissions. Companies are free to provide larger renewal commissions if they choose.

The prospective purchasers of medicare supplement insurance policies are senior citizens, many living on fixed incomes with considerable concern about medical costs. The field is one particularly subject to abuse by unscrupulous agents.[4] This concern is indicated by the federal legislation in the area evidencing an attempt to regulate nationally abuses in the sale of such policies, in an attempt to protect vulnerable consumers. The NAIC regulations, and the comparable regulations of the Director under attack here, are an effort to control the potential of abuse inherent in the nature of the insurance involved. The NAIC and the Director have sought to exercise such control by establishing a relationship between first year commissions and renewal commissions. The statute authorizes regulations, establishing such Director to issue the regulations in question. We find he acted within the statutory authority granted him by Sec. 376.869, RSMo Cum. Supp.1990. The regulations establish a minimum standard for compensation arrangements which is what the statute authorizes.

In their petition the plaintiffs also challenged the constitutionality of the regulations. This attack was based upon Art. I, Sec. 2 of the Missouri Constitution. The trial court at the hearing expressed its opinion that no constitutional infirmity existed. The judgment entered, however, stated that in view of the court's finding that the regulations were beyond the statutory authority granted, the constitutional issue was moot and the court was expressing no opinion on that issue. Plaintiffs

have not raised the constitutional issue in this court as an alternative basis for overturning the regulations. Their petition did not challenge the constitutionality of the statute authorizing the regulations. We have upheld the validity of the regulations as within the statute or grant of authority. If a constitutional challenge exists it exists against the statute and such a claim has not been asserted.

Judgment reversed.

CARL R. GAERTNER, C.J., and REINHARD, CRIST, SATZ, SIMON, CRANDALL, KAROHL, GARY M. GAERTNER, GRIMM, CRANE and AHRENS, JJ., concur.

STEPHAN, J., dissents in separate dissenting opinion.

PUDLOWSKI, J., dissents and concurs in dissenting opinion of STEPHAN, J.

STEPHAN, Judge, dissenting.

I respectfully dissent. As I indicated in my divisional opinion, the term "minimum standards", as set out in the statute, allows the Director to establish the least amount of compensation arrangements an insurance agent may earn. He may not set an upper level amount. In reading the regulations, however, we find that the Director has attempted to place maximum limits on such compensation arrangements. *See, Frasher v. Spradling*, 743 S.W.2d 109, 110 (Mo.App.1988). Section (10)(A) contains the language "no more than two hundred percent" which means that 200% of the commission is the *top* figure an insurance agent may make, not the least amount. Section (10)(B) requires that "compensation provided in subsequent renewal years must be the same as that provided in the second year." This requirement means that an agent may not be paid any more than the compensation provided in year two for subsequent years. Finally, Section (10)(E) re-

the rates established by the companies under the challenged regulations exceeded the income received at the rates pre-regulation if the policies were continued in effect for the four year period.

4. Our reference to "abuse by unscrupulous agents" is addressed to the potential for abuse by a limited few and is not intended to convey, directly or by implication, that plaintiffs, or insurance agents generally, are other than scrupulously honest and reputable in their business dealings.

quires that bonus incentives, both pecuniary and nonpecuniary, must be included in the compensation arrangements. This rule effectively wipes out the bonus system, a strong driving force in sales production. The Director, in promulgating the above regulations, exceeded the authority that is legislatively delegated to him. I, therefore, would affirm the trial court's determination that 4CSR 190–14.625(10)(A), (B), and (E) are ultra vires and invalid and affirm the judgment enjoining the Director from enforcing these sections.