In the Matter of Viola R. (Hoover) RIDGEWAY, Plaintiff.

Cecil RIDGEWAY, Appellant,

v.

Dale ARCHDEKIN, Respondent.

No. WD 47804.

Missouri Court of Appeals, Western District.

May 24, 1994.

Joe B. Whisler, Kansas City, for appellant.

Bruce D. Enlow, St. Joseph, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and SPINDEN, JJ.

BRECKENRIDGE, Judge.

This appeal involves a probate proceeding in which Cecil Ridgeway elected to take against the will of his deceased wife, Viola R.

Hoover Ridgeway. Mr. Ridgeway appeals the judgment of the circuit court, probate division, which ordered that in calculating Mr. Ridgeway's elective share under § 474.-163, RSMo 1986,[1] Ms. Ridgeway's estate was properly enhanced by a $1,000 survivor's benefit, a $5,000 certificate of deposit, and a joint checking account in the amount of $12,-447.13. Mr. Ridgeway raises one point on appeal, contending that the trial court erred in including these items in the estate "because ... none are properly includable under R.S.Mo 474.163." The judgment of the trial court is affirmed.

Viola R. Hoover Ridgeway died testate on January 22, 1992. At the time of her death, Ms. Ridgeway was married to Cecil Ridgeway. Mr. Ridgeway timely filed his election to take against his wife's will pursuant to § 474.160. Before calculating Mr. Ridgeway's elective share, the probate division of the circuit court of Buchanan County requested that Mr. Ridgeway file an affidavit detailing the value at Ms. Ridgeway's death of any property derived from her that passed to Mr. Ridgeway outside probate as a result of her death. Mr. Ridgeway subsequently filed an affidavit indicating that "there were no funds in any joint accounts upon which my wife and I were signatories which at the time of her death could not be attributed directly to my contribution." He further attested that he "received no other assets or income outside of the Probate estate in this matter attributable to the Deceased."

Upon receiving Mr. Ridgeway's affidavit, the probate division entered an Order Approving Final Settlement and Distribution of Ms. Ridgeway's estate. Shortly after the order was entered, Dale R. Archdekin, the brother of Ms. Ridgeway and the personal representative of her estate under her will, filed an objection to Mr. Ridgeway's affidavit and to the probate division's proposed order of distribution. Mr. Archdekin stated in his objections that he believed that, contrary to Mr. Ridgeway's assertions in his affidavit, Mr. Ridgeway had received $1,000 from an insurance policy on Ms. Ridgeway's life, a certificate of deposit in the amount of $5,000 plus accrued interest attributable entirely to Ms. Ridgeway, and the proceeds of a joint bank account.

After written arguments were submitted and a hearing was held on Mr. Archdekin's objections, the trial court issued an Amended Order Approving Final Settlement and Distribution. In its order, the trial court found that the insurance proceeds ($1,000), the certificate of deposit ($5,000), and the joint checking account ($12,447.13) should have been considered as property received by Mr. Ridgeway from Ms. Ridgeway outside probate. The effect of the trial court's decision was to augment Ms. Ridgeway's estate under § 474.163 by the total of these three items ($18,447.13), thereby reducing Mr. Ridgeway's elective share by one-half that amount ($9,223.32).[2] Mr. Ridgeway now appeals the trial court's decision.

■ Appellate review of this court-tried civil case is governed by the dictates of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decision of the trial court must be affirmed unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law. *Id.* at 32. *See also Estate of Leve v. Leve*, 704 S.W.2d 263, 264 (Mo.App.1986).

Mr. Ridgeway contends on appeal that the trial court erred in including the survivor's benefit, the certificate of deposit, and the joint checking account in Ms. Ridgeway's estate for purposes of calculating his elective share of the estate. Section 474.163 prescribes the method for determining the value of a decedent's estate when the decedent's surviving spouse elects to take against the will pursuant to § 474.160 and states in part:

1. For the purposes of section 474.160, the estate consists of all money and property owned by the decedent at his death, reduced by funeral and administration expenses, exempt property, family allowance and enforceable claims, and increased by

---

1. All statutory references are to Revised Missouri Statutes 1986, unless otherwise indicated.

2. Because there were no lineal descendants of Ms. Ridgeway, Mr. Ridgeway was entitled to one-half of Ms. Ridgeway's estate upon electing to take against her will. Section 474.160.1(1).

the aggregate value of all money and property derived by the surviving spouse from the decedent by any means other than testate or intestate succession, exempt property or family allowance without a full consideration in money or money's worth. The aggregate value of money and property so derived by the surviving spouse from the decedent shall be offset against the elective share given by section 474.160.

2. Property derived from the decedent includes, but is not limited to:

\* \* \* \* \* \*

(3) Any proceeds of insurance, including accidental death benefits, on the life of the decedent attributable to premiums paid by him;

\* \* \* \* \* \*

Premiums paid by the decedent's employer, his partner, a partnership of which he was a member, or his creditors, are deemed to have been paid by the decedent.

3. When immediately before the decedent's death the surviving spouse was a cotenant or remainderman with respect to money, property, a trust fund or an account in a bank or other financial institution and, incident to such death, the surviving spouse became the sole owner thereof or the owner of a life interest therein, the whole value of such sole ownership or life interest shall be deemed to have been received from the decedent, except as to the proportion of such value, if any, derived from contributions toward the acquisition, establishment or creation or [3] the money, property, fund or account made by the surviving spouse or ascendant or collateral blood relatives of the surviving spouse, other than the decedent.

\* \* \* \* \* \*

5. Property owned by the surviving spouse as of the decedent's death, or previously transferred by the surviving spouse, is presumed to have been derived from the decedent, except to the extent that the surviving spouse establishes that it was derived from another source.

When construing a statute, the fundamental role of the court is "to give effect to the purpose of its enactment and the evident legislative intent." *AT & T v. Wallemann,* 827 S.W.2d 217, 223 (Mo.App.1992). The intent of the legislature is to be determined by considering the plain and ordinary meaning of the words in the statute. *Jones v. Director of Revenue,* 832 S.W.2d 516, 517 (Mo. banc 1992). "The legislature is presumed to have intended what the statute says and if the language is clear and unambiguous there is no room for construction." *Brown v. Melahn,* 824 S.W.2d 930, 933 (Mo. App.1992). Assuming that the legislature intended a logical result, courts must give effect to statutes as they are written. *Id.*

The goal of § 474.163, like that of § 2–202(2) of the Uniform Probate Code upon which the Missouri statute was based, is "to prevent the surviving spouse from electing a share of the probate estate when the spouse has received a fair share of the total wealth of the decedent either during the lifetime of the decedent or at death by life insurance, joint tenancy assets and other nonprobate arrangements." Unif. Probate Code § 2–202, 8 U.L.A. comment at 77–78 (1983). *See also* Francis M. Hanna, *Probate Code Manual,* 4 Mo. Practice § 474.163 at 431 (1986). The three items included in Ms. Ridgeway's estate and disputed by Mr. Ridgeway must be analyzed with this objective in mind.

*Survivor's Benefit*

Upon Ms. Ridgeway's death, Mr. Ridgeway received a $1,000 survivor's benefit from a bank in which Ms. Ridgeway held funds. The benefit consisted of the proceeds of an accidental death insurance policy that Ms. Ridgeway received because she held an account with the bank. An employee of the bank testified that the insurance was offered as a promotion to induce people to open an account with the bank and that the bank paid for the cost of obtaining the insurance.

Pursuant to § 474.163.2(3), "[a]ny proceeds of insurance, including accidental death benefits, on the life of the decedent attributable to

payments paid by [the decedent]" are property derived from the decedent and thus properly included in the decedent's estate for purposes of calculating an elective share. At the conclusion of subsection 2 of § 474.163 the statute provides that premiums paid by the decedent's employer, partner, partnership, or creditors are considered to have been paid for by the decedent.

Mr. Ridgeway contends that because the premiums for the accidental death benefits were paid for by Ms. Ridgeway's bank, the insurance proceeds were not "[p]roperty derived from the decedent" and therefore should not have been included in Ms. Ridgeway's estate pursuant to § 474.163. He maintains that "the legislature has clearly stated that the only insurance includable is one where the premiums are paid by (1) the decedent or (2) a very limited class of others for her benefit."

Mr. Ridgeway ignores the language at the beginning of subsection 2 of § 474.163: "Property derived from the decedent *includes, but is not limited to* . . . ." (Emphasis added). The statute sets out examples of property considered to be derived from the decedent "by way of illustration and not limitation." Barnett M. McKee, *Calculating the Surviving Spouse's Elective Share*, 40 J.Mo. Bar 383, 384 (1984).

The circumstances of the instant case in which Ms. Ridgeway's bank provided her with the accidental death insurance coverage in exchange for her agreement to maintain an account in that bank are analogous to the examples listed at the end of subsection 2 in which premiums paid by others are deemed to have been paid by the decedent. As in the examples, the current case involves the payment of premiums by a third party with which the decedent had some type of business relationship. The fact that the decedent did not personally "pay" for the insurance in each of these situations is irrelevant; the receipt of the benefit stems from and is dependent upon the decedent's action in entering into these business relationships.

The proceeds of life insurance are included in the augmented estate "because it seems unfair to allow a surviving spouse to disturb the decedent's estate plan if the spouse has received ample provision from life insurance." Unif. Probate Code § 2–202, *supra*, comment at 78. Considering the policy behind the statute as well as the similarity between the instant circumstances and the statutory examples of situations in which the payment of premiums by third parties is deemed to be payment by the decedent, this court concludes that the trial court correctly applied the law in enhancing Ms. Ridgeway's estate by the inclusion of the $1,000 survivor's benefit.

### Certificate of Deposit

■ The second item included in Ms. Ridgeway's estate and disputed by Mr. Ridgeway is a $5,000 certificate of deposit (CD) made out in the name of "Viola R. Hoover or Cecil C. Ridgeway." Mr. Ridgeway cashed the CD after Ms. Ridgeway's death. Mr. Ridgeway testified that the CD was funded with money from Ms. Ridgeway alone and that she added his name to the CD in 1987 or 1988, prior to their marriage.

Mr. Ridgeway argues initially that the CD should not be included in the estate because he acquired his joint tenancy interest in the CD prior to the marriage. As support for his argument he quotes from Hanna, *supra*, at 434: "Although not specifically identified as such, prior transfers during marriage to the decedent are obviously in view here."

Mr. Ridgeway has taken this sentence out of context. The sentence is within a paragraph discussing the presumption contained in § 474.163.5 and refers to property transferred by the surviving spouse. It clarifies § 474.163.5 by specifying that the presumption applies to property transferred by the surviving spouse during the marriage of the spouse and the decedent. *See* Hanna, *supra*, comment at 433–34.

Neither § 474.631 nor § 2–202 of the Uniform Probate Code place a time limit on when interspousal transfers must be made in order for property so acquired by the surviving spouse to be included in the augmented estate. The Comments to § 2–202 of the Uniform Probate Code note that in analyzing the property of the surviving spouse derived from the decedent "the time when the surviv-

ing spouse derives her [or his] wealth from the decedent is immaterial.... [N]o distinction is drawn as to whether the transfers are made before or after marriage." Unif. Probate Code § 2–202, *supra*, comment at 78. *See also* Sheldon F. Kurtz, *The Augmented Estate Concept Under the Uniform Probate Code: In Search of an Equitable Elective Share*, 62 Iowa L.Rev. 981, 1037 (1977) ("It is irrelevant whether the property acquired from the decedent was acquired prior to or during the marriage.").

The commentary concerning the timing of interspousal transfers in relation to § 2–202 is equally applicable to § 474.163. That Mr. Ridgeway's name was placed on the CD prior to his marriage to Ms. Ridgeway will not prevent the CD from enhancing Ms. Ridgeway's estate.

Mr. Ridgeway presents an additional argument against the inclusion of the CD in Ms. Ridgeway's estate. He maintains that he provided consideration for the transfer of this money from contributions he made to the marriage. He claims that, although Ms. Ridgeway initially put Mr. Ridgeway's name on the CD with the instructions that he use it to pay for her funeral, after Ms. Ridgeway made her funeral arrangements herself, she gave him the $5,000. According to Mr. Ridgeway, Ms. Ridgeway told him, "You can have that $5,000. You drove me around more than that, spent that much driving me around."

■ All property owned by the surviving spouse as of the decedent's death is presumed to have been derived from the decedent. Section 474.163.5. The surviving spouse may rebut this presumption, however, by establishing that the property was derived from another source. *Id.*

While subsection 1 of § 474.163 addresses property derived by the surviving spouse from the decedent in general, subsection 3 of the statute pertains specifically to the derivation of jointly-held property or money. Therefore, subsection 3 governs when determining the derivation of jointly-held property or money, rather than the more general provisions of subsection 1. *State ex rel. Jackson Cty. v. Pub. Serv. Com'n*, 532 S.W.2d 20, 27 (Mo. banc 1975), *cert. denied*, 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976) ("Where general terms or expressions in one part of a statute are inconsistent with more specific provisions in another part thereof, the specific provisions must govern."). Pursuant to subsection 3, if immediately prior to the decedent's death the surviving spouse was a cotenant or remainderman with respect to money, property, a trust fund, or an account held in a bank or other financial institution which becomes the sole property of the surviving spouse upon the decedent's death, the whole value of the sole ownership is deemed to have been received from the decedent. Section 474.163.3. Excepted from inclusion is "the proportion of such value, if any, derived from contributions toward the *acquisition, establishment, or creation* o[f] the money, property, fund or account made by the surviving spouse or ascendant or collateral blood relatives of the surviving spouse, other than the decedent." *Id.* (emphasis added). When determining the source of jointly-held money, property, funds or accounts under § 474.163, only the surviving spouse's contribution to the acquisition, establishment, or creation of such property can rebut the presumption of decedent derivation.

Mr. Ridgeway admitted that the $5,000 CD was funded with money from Ms. Ridgeway alone, thereby acknowledging that he did not contribute to the acquisition, establishment, or creation of the CD. Under § 474.163.3, any post-transfer consideration he may have provided is irrelevant.

Mr. Ridgeway failed to rebut the presumption that the $5,000 CD was derived from Ms. Ridgeway. The trial court correctly included the CD in the augmented estate.

### *Joint Checking Account*

■ Mr. and Ms. Ridgeway held two joint checking accounts at the time of Ms. Ridgeway's death. One of these accounts, a money market account, was included in Ms. Ridgeway's estate by the trial court for purposes of determining Mr. Ridgeway's elective share. Mr. Ridgeway contends that the trial court erred in enhancing Ms. Ridgeway's estate by the amount of this account.

The evidence at trial established that the money market account was originally owned by Ms. Ridgeway and her first husband. After her first husband's death, the account was held in Ms. Ridgeway's name alone. Twelve days after Ms. Ridgeway's marriage to Mr. Ridgeway, Mr. Ridgeway's name was added to the account. The balance of the account on the date of transfer was $9,981.44. On the date of Ms. Ridgeway's death, the account was valued at $12,447.13.

The custodian of the bank testified that the money market account was an active checking account on which checks were written and in which money was deposited. The additions to the account were from interest accruing on the money market account, the automatic deposit of Ms. Ridgeway's social security and interest transfers from Ms. Ridgeway's CDs. When Mr. Ridgeway was asked if he had ever deposited any of his own money in the money market account, Mr. Ridgeway stated that he thought he had once given Ms. Ridgeway $60 to put in the account "because she bought me something."

Although the account appears to have been derived from Ms. Ridgeway alone, Mr. Ridgeway argues that the account should not be included in the augmented estate because he "offer[ed] money or money's worth in exchange for the sums derived from the joint account in question." He contends that he contributed $28,000 to the marriage and that, therefore, although the money market account may have been derived from Ms. Ridgeway, the $12,447.13 that Mr. Ridgeway received from the account upon Ms. Ridgeway's death "was not without full consideration."

Since at least a portion of the balance in the money market account was acquired during the marriage, it is necessary to determine if Mr. Ridgeway's contributions to the marriage constitute consideration for the transfer of the money in the account. The determination of whether Mr. Ridgeway provided consideration to rebut the presumption that the money market account should be included in Ms. Ridgeway's estate is a question of fact. In a case tried to the bench, the trial judge is the fact finder. *First Nat. Bank of Sikeston v. Goodnight*, 721 S.W.2d 122, 123 (Mo.App.1986). The trial court was free to believe all, part or none of Mr. Ridgeway's testimony, *Fowler v. Fowler*, 732 S.W.2d 235, 237 (Mo.App.1987), even though uncontradicted. *Grinnell Mut. Reinsurance Co. v. Scott*, 628 S.W.2d 355, 357 (Mo.App.1981).

Mr. Ridgeway claims on appeal that his income provided for the monthly expenses that he and Ms. Ridgeway incurred during their marriage and that the utilization of Mr. Ridgeway's cash instead of his wife's equally available money was full consideration under § 474.163. He testified to the contrary, however. Mr. Ridgeway admitted during the hearing that "[t]he money we ate on and lived on during the month came from her Social Security check."

The trial court apparently did not believe that Mr. Ridgeway's payment of a portion of the couple's living expenses from his income was sufficient to constitute a contribution toward "the acquisition, establishment or creation" of the money market account. The trial court's determination is supported by substantial evidence and correctly declares and applies the law.

The trial court did not err in including the survivor's benefit, the CD, and the joint money market checking account in Ms. Ridgeway's estate for purposes of determining Mr. Ridgeway's elective share pursuant to § 474.163. The judgment of the trial court is affirmed.

All concur.