539 N.W.2d 67 (1995)
In the Matter of the ESTATE OF Anna Mary ZIMBLEMAN, also known as Anna Mary Zimbleman, Deceased.
Emil ZIMBELMAN, Plaintiff and Appellant,
v.
Donald LOH, Personal Representative of the Estate of Anna Mary Zimbelman, Darlene Frey, Marvin Zimbelman, Defendants and Appellees, and
Anna Mae Lessar, Darvin Zimbelman, and Arvin Zimbelman, Defendants.
Civ. No. 950056.
Supreme Court of North Dakota.
October 31, 1995.
*69 Timothy A. Priebe of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellant.
Michael S. McIntee of McIntee Law Firm, Towner, for appellee Marvin Zimbelman.
James D. Gion of Gion Law Office, Regent, for appellee Darlene Frey.
David Crane, Mott, for appellee Donald Loh; submitted on brief.
LEVINE, Justice.
Emil Zimbelman, a son and devisee of Anna Mary Zimbelman, deceased, appeals from a county court order authorizing the personal representative of Anna's estate to sell certain real property at public sale. We affirm.
Anna executed her will on July 14, 1971. She died February 2, 1992, and her will was admitted to informal probate on April 16, 1992. The court appointed Emil co-personal representative of the estate.
The will provisions pertinent to the disposition of Anna's real property are:
"SECOND: I give, devise and bequeath my entire estate, whatsoever and wheresoever located, to my six children; namely, Emil Zimbelman, Anna Mae Lessar, Arvin Mike Zimbelman, Darvin William Zimbelman, Darlene Frey, and Marvin Dale Zimbelman, share and share alike.
.....
"FOURTH: As it is my desire that the farm land which I own remain in the family, I hereby direct that should anyone of my children desire the land which I may own at my death, that such child may *70 purchase such land for its appraised value upon the agreement of the remaining children, and that the sum received from such child for the sale of said land, be equally distributed amongst my children."
The "farm land" mentioned in paragraph FOURTH of Anna's will was two quarters of land in Grant County. One quarter, the Northwest Quarter (NW1/4), was primarily suited to growing crops. The other, the South Half of the South Half (S1/2S1/2) was primarily pasture land. An appraisal of the land's value was submitted to the estate on August 23, 1992. The appraiser deemed the NW1/4 to be worth $24,000 and the S1/2S1/2 to be worth $22,900.
In November 1992, Emil offered to buy all the estate's farm land at the appraised price. He sought the consent of the other heirs, but no sale was made. Acting in his capacity as co-personal representative, Emil then sought public bids on the land in April 1993. This action met with objections from some of the heirs. In May 1993, Emil took bids from family members for the land. Emil had the high bid on one quarter, and Darlene Frey had the high bid on the other. Neither, however, could obtain the consent of all their siblings to the respective sales.
Acting again in his capacity as co-personal representative, Emil sought court approval for the sale of one quarter of the land to himself. Emil's motion was opposed by Darlene and by Marvin Zimbelman. Both also requested that Emil be removed as co-personal representative. On July 15, 1993, the county court denied Emil's land sale motion and ordered Emil removed as co-personal representative.
The county court appointed Donald Loh successor personal representative on October 26, 1993. Acting in this capacity, Loh submitted a petition to the court, requesting a public sale of the estate's land, in February 1994. Emil and Anna Mae Lessar resisted the petition, and Loh withdrew it in March 1994. Loh next obtained a new appraisal of the estate land. The appraiser deemed the NW1/4 to be worth $27,904 and the S1/2S1/2 to be worth $23,306. On August 22, 1994, Loh submitted a petition for approval of his appraisement and inventory. On September 8, 1994, Marvin moved that the estate real estate be sold at public sale with the mineral rights reserved to the heirs.
The motions submitted by Marvin and Loh were heard in Grant County court on October 13, 1994. The court granted Marvin's motion, and ordered the personal representative to arrange a public sale of the estate land. Emil appealed.
The county court's order is appealable because Anna's estate was being administered under our informal probate procedures. See NDCC ch. 30.1-14. Informal probate proceedings are not supervised under the guidelines set forth in chapter 30.1-16, NDCC. Therefore, "each proceeding before the court is independent of any other proceeding involving the same estate." NDCC § 30.1-12-07. Orders in an unsupervised probate are appealable without certification under Rule 54(b), NDRCivP, unless they determine "some, but not all, of one creditor's claims against an estate." Estate of Starcher, 447 N.W.2d 293, 296 (N.D.1989).
Emil argues that the county court erred when it interpreted Anna's will because it failed to give proper weight to her expressed intent that the farm land stay in the family. The county court first looked to paragraph SECOND of the will and found that Anna gave each of her children an equal share of her property. The court next looked to paragraph FOURTH of the will, and found that Anna designated a method by which any child could purchase the estate farm land, but made such purchase conditional upon "the agreement of the remaining children."
The court found that the condition of agreement contained in paragraph FOURTH had never been met. Because Anna's will specified no method for selling the farm land in lieu of an agreement, the court found it to be "incomplete." The court concluded that a public sale would be in the best interests of the estate, based on its findings that the children did not get along and that a private sale had been tried and failed.
We decide for ourselves the construction of an unambiguous will. Schatz v. Schatz, 419 N.W.2d 903 (N.D.1988). The *71 testator's intent, as expressed in the will, controls the legal effect of the testator's dispositions. NDCC § 30.1-09-03. When we construe a will, our purpose is to ascertain the testator's intent as it appears from a complete consideration of the will given the surrounding circumstances. Quandee v. Skene, 321 N.W.2d 91 (N.D.1982). If the language of the will is clear and unambiguous, we determine the testator's intent from the language of the will. Jordan v. Anderson, 421 N.W.2d 816 (N.D.1988).
In paragraph FOURTH of her will, Anna expressed a desire that the farm land stay in the family. She also, however, directed that any sale of the estate farm land to one child was subject to approval by the other children. Emil argues that, above all else, Anna wanted the farm land to stay in the family. He argues that the clause expressing this desire should control the interpretation of paragraph FOURTH. While it is clear from paragraph FOURTH that Anna wanted to give her children the opportunity to buy the farm land, it is equally clear that she wanted all the children to agree to such a sale. Because the children cannot agree, the clauses of paragraph FOURTH are at odds with each other.
Emil argues that paragraph FOURTH is therefore ambiguous because it can be given alternate interpretations depending on which clause is deemed controlling. Whether an ambiguity exists in a will is a question of law for this court to decide. Erickson v. Ward, 351 N.W.2d 445 (N.D. 1984). A will provision is ambiguous if it can be given more than one interpretation or understood in more than one sense. Schatz, 419 N.W.2d at 906. In asking us to declare paragraph FOURTH of Anna's will ambiguous, Emil asks us to agree that one clause of the paragraph must control. He then invites us to look at extrinsic evidence to determine which clause should control. When we construe a will, however, we attempt to give effect to each word, clause, and provision. Quandee, 321 N.W.2d at 95. Because we can read paragraph FOURTH in a way that gives meaning to each clause, we decline Emil's invitation to find paragraph FOURTH ambiguous.
Instead, we agree with the county court that paragraph FOURTH is a devise subject to a condition. Anna created a mechanism by which her children could buy the farm land. She made the sale of the farm land to a child contingent on the agreement of the other children. This was a conditional devise. There are two types of conditions: conditions precedent and conditions subsequent. A condition precedent is a condition which must occur before an interest can vest; a condition subsequent defeats an interest that has already vested. Estate of Rozanski, 356 Pa.Super. 234, 514 A.2d 587 (1986); Megery v. Selymes, 14 Ohio App.2d 28, 235 N.E.2d 725 (1968); see also E.E.E., Inc. v. Hanson, 318 N.W.2d 101 (N.D.1982). Because Anna's will required all the children to agree to a sale before one child could exercise the right to buy, Anna's will imposed a condition precedent. If a condition precedent to a devise does not take place, the conditional devise becomes inoperative. Semmes v. Gary National Bank, 254 Ind. 682, 262 N.E.2d 529 (1970); Estate of Alpers, 251 Cal.App.2d 40, 58 Cal.Rptr. 841 (1967); see also Mattco, Inc. v. Mandan Radio Ass'n, Inc., 224 N.W.2d 822 (N.D.1974). Because none of Anna's children was able to obtain the agreement of the other children to the sale of the farm land, the devise of the right to buy the farm land failed. See Mollencamp v. Farr, 70 Kan. 786, 79 P. 646 (1905) [holding that clause of will allowing sons to purchase farm land failed because condition precedent to sale was not performed].
The county court did not err in finding that paragraph FOURTH of Anna's will contained a conditional devise, nor in finding that the devise failed. When a devise fails for a reason other than the death of the devisee, it becomes part of the residue. NDCC § 30.1-09-06(1). The residue, or residuum, is that portion of the testator's property not otherwise disposed of by will. See 4 Bowe-Parker: Page on Wills § 33.46 at 369-70 (Rev. Treatise 1995). While there is no designated residuary clause in Anna's will, paragraph SECOND, devising all property to the children, is effectively a residuary clause because it disposed of the residue. Id. We *72 hold that, when the devise in paragraph FOURTH failed, all rights to the farm land were given to the children via the grant in paragraph SECOND.
The failure of the devise did not erase Anna's stated wish that the farm land stay in the family. It did, however, eliminate the mechanism she created to achieve this end. Her words of desire, standing alone, are merely precatory. "At best, they do no more than express a wish or desire on the part of the testator...." Estate of Lubenow, 146 N.W.2d 166, 168 (N.D.1966). Such words cannot destroy an absolute and unconditional devise of property. Id.; see also Hagerott v. Davis, 73 N.D. 532, 17 N.W.2d 15 (1944). Anna unconditionally gave her property to her children in paragraph SECOND of her will. She stated her desire that the farm land stay in the family in paragraph FOURTH. The precatory language in paragraph FOURTH does not make conditional the previous absolute devise in paragraph SECOND. The county court did not err when it found that Anna gave her entire estate to her children. We hold that this devise was absolute and unconditional.
Emil argues, however, that even if the county court properly interpreted the will, it should have distributed the farm land in kind to the heirs, rather than ordering its liquidation through public sale. The county court ordered a public sale because it found: "Under the facts and circumstances of this case, an in kind distribution of the land would not be a practicable or a workable solution. It appears that the children do not want an in kind distribution, joint ownership, or a partition of the land."
The county court's finding was a finding of fact. We will not set aside a finding of fact "unless clearly erroneous." Rule 52(a), NDRCivP. A finding of fact is clearly erroneous when, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction a mistake has been made. Rassier v. Houim, 488 N.W.2d 635 (N.D.1992). A finding of fact also may be clearly erroneous if it was induced by an erroneous view of the law. Manz v. Bohara, 367 N.W.2d 743 (N.D.1985).
There is substantial evidence in the record to support the county court's finding. There is evidence that the heirs did not get along. There is evidence that some of the heirs, especially Marvin and Darlene, did not want an in kind distribution of the land. We are not convinced the county court made a mistake in evaluating the evidence in the record.
Our law, however, contains a preference for in kind distribution of property. Section 30.1-20-06(1), NDCC, says that "[u]nless a contrary intention is indicated by the will, the distributable assets of a decedent's estate shall be distributed in kind to the extent possible through application of the following provisions." But, subsection (d) of this section directs that "[t]he residuary estate must be distributed in any equitable manner." The Editorial Board Comment to section 30.1-20-06 makes clear that: "This section establishes a preference for distribution in kind. It directs a personal representative to make distribution in kind whenever feasible and to convert assets to cash only where there is a special reason for doing so."
This court has not previously interpreted section 30.1-20-06, but we interpret uniform laws in a uniform manner and therefore may seek interpretive guidance from other states that had adopted uniform laws. NDCC § 1-02-13; Zuger v. N.D. Ins. Guaranty Ass'n, 494 N.W.2d 135 (N.D.1992). Section 30.1-20-06 is derived from section 3-906 of the Uniform Probate Code (UPC). See 1989 N.D. Laws, ch. 401, § 8. The Maine supreme judicial court interpreted Maine's version of UPC section 3-906 in Estate of Haynes, 594 A.2d 1112 (Me.1991). The Haynes court stated that section 3-906 did not remove the probate court's broad discretion to distribute estate assets. Id.
The original language of section 30.1-20-06 gives insight as to the bounds of the probate court's discretion. Subsection (d) of this section originally stated:
"The residuary estate shall be distributed in kind if there is no objection to the proposed distribution and it is practicable to distribute undivided interests. In other cases, residuary property may be converted *73 into cash for distribution." 1973 N.D. Laws ch. 257.
The current version of subsection (d) states that "[t]he residuary estate must be distributed in any equitable manner." NDCC § 30.1-20-06(1)(d). The language of the new version of subsection (d) is broader than that of the old version. It therefore grants more authority to the court, not less. Such a broad grant of authority is consistent with the legislature's general grant of greater power to the county courts, which became effective January 1, 1983. See Estate of Binder, 366 N.W.2d 454 (N.D.1985). Because county courts had exclusive original jurisdiction over probate, they had all the incidental powers necessary for the adjudication of probate matters.[1]Kopperud v. Reilly, 453 N.W.2d 598 (N.D.1990).
The county court found that in kind distribution of the land would be neither practicable nor workable, and that it was not desired by the heirs. Under the prior version of section 30.1-20-06(1)(d), the court's public sale order would have been warranted because the court found all the factors necessary to justify a cash distribution of the residuary estate. The current section's broader authority to distribute the residuary estate "in any equitable manner," clearly condones the decision of the county court. Because section 30.1-20-06 requires that in kind distribution be made only "to the extent possible," we hold that it was not clear error of fact or law for the county court to order the personal representative to arrange a public sale of the farm land, with the mineral rights reserved to the heirs.
The order of the county court is affirmed.
VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.
NOTES
[1] Our county courts were abolished effective January 2, 1995. NDCC § 27-05-00.1. Our district courts now have exclusive jurisdiction in probate matters. NDCC § 30.1-02-02.