In the Matter of the ESTATE OF Donna J. LUKEN, Deceased.

Roland LUKEN, Petitioner and Appellant,

v.

Darcy J. SCHULZ, Personal Representative, Respondent and Appellee.

Civil No. 960007.

Supreme Court of North Dakota.

July 24, 1996.

Leslie Johnson Aldrich (argued), Johnson Law Office, Fargo, for appellant.

William P. Harrie (argued), Nilles, Hansen & Davies, Ltd., Fargo, for appellee.

MARING, Justice.

Roland J. Luken (Ron) appeals from a district court order denying his motion to amend an order adopting the personal representative's proposed distribution of the estate of Donna J. Luken, his deceased spouse. We affirm.

Donna died July 4, 1994. Ron and four adult children of a previous marriage survived her. Donna's will, dated June 17, 1994, directed that the bulk of her property be distributed to her children. Donna left her automobiles and an assortment of household goods to Ron. She also left Ron her home, contingent on him making a $40,000 payment to her children. On October 4, 1994, Ron gave notice that he elected to take his share of Donna's augmented estate, as provided by chapter 30.1–05, N.D.C.C., rather than taking under Donna's will. He petitioned the court to calculate his elective share.

In response, the personal representative (P.R.) prepared an augmented estate and elective share analysis. The P.R., however, stated the analysis was incomplete because it was prepared without information about Ron's assets. After a hearing, the district court on May 9, 1994, issued a memorandum opinion and order instructing that, under section 30.1–05–02(2)(c), N.D.C.C.:

> "The burden is on Mr. Luken, the surviving spouse, to establish that any property he owned at Mrs. Luken's death was not derived from her. Unless that burden is sustained, all property owned by Mr. Luken at his wife's death is included in the augmented estate. Thus, Mr. Luken is required to disclose all of his assets to the personal representative."

Seeking information about Ron's assets, the P.R. served a subpoena duces tecum on January 26, 1995, requiring Ron to produce certain documents and records. Ron objected, and, instead of producing the requested material, sent the P.R. a letter, dated June 22, 1995, in which he listed his assets. On July 24, 1995, the P.R. prepared an elective share analysis including the value of Ron's business, R & J Grain Dryers (R & J), in the augmented estate. Ron objected to the P.R.'s proposed distribution, and asked the trial court to calculate his elective share. A hearing was held, and on September 25, 1995, the court dismissed Ron's objections and approved the P.R.'s proposed distribution. Ron moved the court to amend its findings and order. The court denied Ron's motion. Ron appeals.

■ The first issue we consider is whether the trial court's order is appealable. Although neither party raised this question, the right to appeal is statutory and we consider it sua sponte. *E.g., Johnson v. Johnson,* 527 N.W.2d 663, 665 (N.D.1995). The

trial court's November 8, 1995, order denying Ron's motion is appealable because Donna's estate is under informal probate administration. *See* N.D.C.C. ch. 30.1–14. Informal probate proceedings are unsupervised and "each proceeding before the court is independent of any other proceeding involving the same estate." N.D.C.C. § 30.1–12–07; *see Estate of Zimbleman,* 539 N.W.2d 67, 70 (N.D.1995). "Orders in an unsupervised probate are appealable without certification under Rule 54(b), N.D.R.Civ.P., unless they determine 'some, but not all, of one creditor's claims against an estate.'" *Zimbleman,* 539 N.W.2d at 70 (quoting *Estate of Starcher,* 447 N.W.2d 293, 296 (N.D.1989)).

 Rule 52(a), N.D.R.Civ.P., governs our review of this action. While questions of law are fully reviewable on appeal, *State Farm Mut. Auto. Ins. Co. v. Estate of Gabel,* 539 N.W.2d 290, 292 (N.D.1995), under Rule 52(a) we will set aside a trial court's findings of fact only when they are clearly erroneous. *Estate of Ostby,* 479 N.W.2d 866, 869 (N.D. 1992). A finding of fact is clearly erroneous if it is unsupported by evidence or, if some evidence supports it, we are left with a definite and firm conviction the trial court has made a mistake or that an erroneous view of the law induced the finding. *Zimbleman,* 539 N.W.2d at 72.

 The essence of Ron's claim on appeal is the augmented estate was improperly calculated. Under our Uniform Probate Code, a surviving spouse may elect to take a share of the decedent's augmented estate instead of taking under the decedent's will. *See* ch. 30.1–05, N.D.C.C. (Elective Share of Surviving Spouse)[1]. In general, the augmented estate is the sum of:

> "decedent's net probate estate increased by decedent's gratuitous transfers to donees, other than the surviving spouse, and by the value of the spouse's property owned at the decedent's death and the value of property transferred by the spouse to donees, other than the decedent, to the extent such owned or transferred property was derived from the decedent."

Sheldon F. Kurtz, *The Augmented Estate Concept Under the Uniform Probate Code: In Search of an Equitable Elective Share,* 62 Iowa L.Rev. 981, 1012 (1977) (hereinafter Kurtz).

Section 30.1–05–02, N.D.C.C., governs calculation of the augmented estate. The underlying goal of the augmented estate concept is to protect the surviving spouse from disinheritance. Kurtz at 1011. Ron's first argument is the trial court erred by finding R & J was derived from Donna and by including R & J's value in the augmented estate. Section 30.1–05–02(2)(c), N.D.C.C., requires:

> "Property owned by the surviving spouse as of the decedent's death, or previously transferred by the surviving spouse, is presumed to have been derived from the decedent except to the extent that the surviving spouse establishes that it was derived from another source."

The trial court found Ron failed to rebut the statutory presumption and concluded R & J was derived from Donna.

Ron claims he provided enough evidence to rebut the presumption his business was derived from Donna. Under Rule 301(a), N.D.R.Ev., once a presumption is established, it:

> "substitutes for evidence of the existence of the fact presumed until the trier of fact finds credible evidence that the fact presumed does not exist, in which event the presumption is rebutted and fails to operate. A party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed facts is more probable than its existence."

"Rule 301, N.D.R.Ev., 'operates to shift the original burden of proof to the opponent of the presumption[.]'" *Land Office Co. v. Clapp–Thomssen Co.,* 442 N.W.2d 401, 406 (N.D.1989).

 We have not previously considered what type and amount of "credible evidence" are required to rebut the presumption contained in section 30.1–05–02(2)(c). This section, however, is derived from section 2–202

---

1. Chapter 30.1–05, N.D.C.C. was repealed effective January 1, 1996, and replaced by a new chapter 30.1–05. *See* 1993 N.D. Laws ch. 334,

§ 50. The former chapter 30.1–05 applies in this case, and all references to 30.1–05 in this opinion refer to the former chapter 30.1–05.

of the Uniform Probate Code. We interpret uniform laws in a uniform manner and may seek interpretive guidance from other states that have adopted uniform laws. *Zimbleman,* 539 N.W.2d at 72; *see* N.D.C.C. § 1-02–13.

■ A surviving spouse may rebut the presumption his or her property was derived from the deceased spouse "by establishing that the property was obtained from a different source." *Estate of Lettengarver,* 249 Mont. 92, 813 P.2d 468, 472 (1991); *see also Matter of Ridgeway,* 877 S.W.2d 167, 171 (Mo.App. W.D.1994); *Estate of Donahue,* 464 N.W.2d 393, 396 (S.D.1990). The surviving spouse bears the burden of showing to what extent his or her property was derived from sources other than the deceased spouse. *See Estate of Fisher,* 545 A.2d 1266, 1270 (Me. 1988).

■ The presumption a surviving spouse's property is derived from the deceased spouse helps insure the surviving spouse does not receive an "excessive share" of the deceased spouse's property. John F. Kuether, *Recent Significant Probate and Trust Decisions,* 26 Real Prop. Prob. & Tr. J. 299, 347 (Summer 1991). Testimony from a surviving spouse may be sufficient to establish property was derived from a source other than the deceased spouse. *See Estate of Ziegenbein,* 2 Neb.App. 923, 519 N.W.2d 5, 8 (1994).

■ At trial, Ron testified he and a partner started R & J in 1977, each contributing $500. Ron testified he bought out his partner in 1979—the same year he married Donna—and had been the sole owner of the business since then. Ron admitted R & J "cleared $100,000 to $150,000 gross" annually in the ten years before Donna's death; gross receipts in 1992 and 1993 were more than $300,000 annually; R & J owned vehicles worth $45,000 to $50,000; R & J had more than $62,000 in its bank accounts at Donna's death; and he had personally borrowed $150,000 from R & J since 1993.

Ron, however, presented no testimony or other evidence explaining to what extent R & J and its apparently valuable resources were derived from sources other than Donna, oth-er than the testimony relating to his initial $500 investment. Because Ron failed to present adequate evidence regarding R & J's derivation, we conclude Ron failed to rebut the statutory presumption his property was derived from his deceased spouse. The trial court, therefore, did not err when it allowed the value of R & J to be included in the augmented estate.

Ron next argues the trial court erred by approving the value the P.R. placed on R & J. Under the P.R.'s augmented estate analysis, which the court approved, the P.R. valued R & J at $120,000 "minimum." The P.R. also accounted for the value of an R & J bank account, $10,111.09, in its augmented estate analysis. Ron claims it was clearly erroneous for the trial court to rely on the P.R.'s "minimum" business value when no qualified witnesses or experts testified to establish the value, and that it was also error for the trial court to approve the P.R.'s inclusion of the business bank account in its analysis in addition to the value of the business itself.

■ Property values are questions of fact subject to the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. *KBM, Inc. v. MacKichan,* 438 N.W.2d 181, 183 (N.D. 1989). In the trial court's findings of fact, upon which it based its order approving the P.R.'s proposed distribution, the trial court found:

"3. That R & J had gross income between $150,000 and $500,000 per year with the gross income being $314,000 in 1992 and $350,000 in 1993.

. . . . .

8. That on or about April 15, 1994, R & J had a balance in its bank account at Gate City Federal Bank of approximately $180,000.

. . . . .

10. That in October, 1994, Ron borrowed $120,000 from R & J to be his cash equity in the purchase of lake property located in Becker County, Minnesota.

11. That on July 4, 1994, R & J had bank account balances at Gate City Federal Bank of $62,629.14 and at First Bank of North Dakota of $10,111.09.

12. That on July 4, 1994, R & J had other assets in the form of vehicles and equipment, less accounts payable, of approximately $28,000.

13. As an on-going business enterprise for approximately 17 years, R & J had an undisclosed amount of accounts receivable and other good will associated with the company."

The trial court's findings relate to R & J's assets, and our review indicates these findings are supported by evidence in the record. The trial court's findings indicate R & J had significant assets, and Ron does not directly challenge these findings on appeal. Instead, Ron argues the trial court erred by ignoring his testimony about R & J's value and its accounts. In essence, Ron's argument is, even though the trial court had significant information about R & J's assets, it could not approve the P.R.'s valuation of R & J in the absence of expert or qualified opinion testimony about the value of the business.

■ Ron provided a listing of assets to the court in which he claimed the value of his 3,000 shares in R & J to be $28,000. Ron testified at trial that this value estimate was based on the value of R & J's vehicles. The trial court expressly found "that Ron's testimony was not credible as it pertains to the value of R & J." Clearly, a business owner is qualified to testify about the value of his business. *Jim's Hot Shot Serv. v. Continental West. Ins.*, 353 N.W.2d 279, 282 (N.D. 1984). Yet a property owner's "opinion of value is insufficient to support a value determination by the factfinder if it is given without a valid basis or is based upon improper facts or analysis." *Heggen v. Heggen*, 452 N.W.2d 96, 99 (N.D.1990). Moreover, it is the trial court's role to judge the credibility of witnesses, and when our review is governed by the "clearly erroneous" standard we defer to the trial court's credibility determinations. *Reede v. Steen*, 461 N.W.2d 438, 442 (N.D.1990). Therefore, we defer here to the trial court's decision not to credit Ron's testimony about R & J's value.

■ The trial court did not have before it an abundance of information about R & J's value, aside from Ron's testimony. The rec-ord shows this situation came about primarily because of Ron's failure to turn over documents and records that might have shed light on R & J's value. When a party's own recalcitrance at the trial court level causes a lack of evidence about the present value of a business, we will not allow the party on appeal to claim error based on deficiency of evidence. *See Anderson v. Anderson*, 504 N.W.2d 569, 571 (N.D.1993). Given that the trial court had significant information about R & J's assets, we conclude it was not clearly erroneous for the trial court to approve the P.R.'s valuation of R & J and include that value and the value of one R & J account in the augmented estate.

■ Ron next argues the trial court erred by not including in the augmented estate the value of several individual retirement accounts (IRAs) Donna made payable to her children. The P.R. argues Ron did not raise this issue before the trial court and has waived it. Our examination of the record indicates Ron raised the IRA issue in his post-trial brief, which the trial court considered before issuing its order approving the P.R.'s proposed distribution. We conclude, therefore, the question of whether the IRAs should have been included in Donna's augmented estate is properly before this court.

■ The IRAs at issue were held in Donna's name and payable to her children. Donna held four separate IRA accounts, which had a total value of $31,836.09 at her death. Ron argues the value of the accounts are includable in the augmented estate under section 30.1–05–02(1), N.D.C.C., as non-probate transfers by the decedent. The P.R. argues the IRAs should not be part of the augmented estate because the IRAs were "pension[s] payable to a person other than the surviving spouse" and excludable under section 30.1–05–02(1)(d), N.D.C.C.

■ When we interpret a statute, we give words their ordinary, plain language meaning. N.D.C.C. § 1–02–02. A pension is "a belated extra payment for long and faithful service," an "additional recompense" paid by an employer. *See Quam v. City of Fargo*, 77 N.D. 333, 43 N.W.2d 292, 297 (1950). An IRA, on the other hand, is a "trust created

... for the exclusive benefit of an individual or his beneficiaries" under specific rules. 26 U.S.C. § 408(a). The legislature has recognized that pensions and IRAs are not the same thing. *See* N.D.C.C. § 28–22–03.1 (specifically, and separately, exempting "pensions" and "individual retirement accounts" from attachment and levy). When we construe a statute, we must presume "that the Legislature intended all it said, and that it said all that it intended to say." *City of Dickinson v. Thress,* 69 N.D. 748, 290 N.W. 653, 657 (1940). Because IRAs are not pensions, and because IRAs are not specifically mentioned as excludable from the augmented estate under section 30.1–05–02(1)(d), N.D.C.C., we conclude Donna's IRAs should have been included in her augmented estate.

 Including the IRAs in Donna's augmented estate, however, will not change the amount to be distributed to Ron under the P.R.'s plan. Donna's net augmented estate is currently $648,646.14. Ron's current gross one-third elective share is $216,215.38. After subtracting augmented estate assets payable to or received by Ron, which total $208,-672.59, Ron is owed $7,542.79 as his net elective share. When the IRA amount, $31,-836.09, is added to Donna's net augmented estate, the new sum is $680,482.23. Ron's new gross one-third elective share is $226,-827.41. After subtracting augmented estate assets payable to or received by Ron, which again total $208,672.59, Ron would now be owed $18,154.82 as his net elective share. Under the P.R.'s proposed distribution, which was approved by the trial court, Ron is to receive $20,000 in lieu of his calculated elective share.

The trial court erred by not requiring the P.R. to include the $31,836.09 in IRAs in Donna's gross augmented estate. The trial court's error, however, does not affect the amount Ron is to receive from the estate because Ron is to receive $20,000 under the approved distribution plan, which is more than his properly calculated elective share of $18,154.82. "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Rule 61, N.D.R.Civ.P. Because the trial court's error did not affect Ron's substantial rights, it was harmless and not grounds for reversal of the trial court's order.

We have considered the other arguments of the parties and find them to be without merit.

We affirm the trial court's order.

VANDE WALLE, C.J., and MESCHKE, SANDSTROM and NEUMANN, JJ., concur.