Selma J. CASADY, Respondent,

v.

The BOARD OF GOVERNORS OF NORTHEAST MISSOURI STATE UNIVERSITY, Appellant.

No. WD 47452.

Missouri Court of Appeals,
Western District.

April 26, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1994.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for appellant.

Branson L. Wood II, Hannibal, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and ELLIS, JJ.

BRECKENRIDGE, Judge.

The Board of Governors of Northeast Missouri State University (Northeast) appeals from a summary judgment in favor of Selma J. Casady in an action brought by Ms. Casady to obtain payment of uninsured motorist benefits from Northeast, her employer. Northeast raises four points on appeal, contending (1) that the trial court erred in granting summary judgment to Ms. Casady and in overruling Northeast's motion to dismiss and for summary judgment because Northeast was not required by contract or statute to pay uninsured motorist benefits. Northeast further claims that the trial court erred in granting summary judgment to Ms. Casady because (2) the State Legal Expense Fund is not self-insurance; (3) even if the State of Missouri is deemed to be a self-insurer, the doctrine of sovereign immunity bars payment of uninsured motorist coverage; and (4) even if the State of Missouri is a self-insurer required to provide uninsured motorist coverage, the trial court erred in concluding that Northeast was estopped from litigating the issues of liability and damages. Because point one is dispositive, this court will not address points two through four. The trial court's grant of summary judgment is reversed, and the cause is remanded with instructions that summary judgment be awarded to Northeast.

Selma J. Casady was injured in an automobile accident on January 13, 1988. At the time of the accident, Ms. Casady was an employee of Northeast and was driving, within the course of her employment, a motor vehicle owned by Northeast. The accident occurred when a vehicle driven by Ronda M. Brown crossed the center line of Missouri Highway 63 and struck the car driven by Ms. Casady head-on. Ms. Brown was not insured.

By a letter dated November 23, 1988, Ms. Casady, through her attorney, demanded that Northeast provide "uninsured motorist coverage" to her, claiming that this coverage arose out of her accident with the uninsured motorist.[1] A copy of the November 23, 1988,

---

1. Ms. Casady was personally insured by Shelter Insurance Company, which paid her $30,465.50 for her injuries under the uninsured motorist clause of her policy. In a letter dated November 27, 1989, to the Risk Management Section of the Missouri Office of Administration, Shelter demanded that the State of Missouri reimburse this payment.

demand letter was forwarded to the Risk Management Section of the Missouri Office of Administration. In response to the demand letter, Don LeMond, a Risk and Insurance Manager with the Risk Management Section, informed Ms. Casady's attorney of the following:

It is our understanding that you are pursuing recovery for your client[ ], ... Selma Jean Casady for injuries related to the January 13, 1988 accident with Ronda M. Brown.

As you may be aware this office administers all liability claims against the State of Missouri, its agencies, officials and employees. The State of Missouri is uninsured for automobile liability, directly expensing [sic] the costs of all claims from the State Legal Expense Fund.

Unable to settle her claim for payment of uninsured motorist benefits by Northeast, Ms. Casady initiated a lawsuit against Northeast in October of 1991. Ms. Casady alleged in her petition that Northeast "provided liability protection to [her] which under the provisions of law included uninsured motorist protection and coverage for the benefit of [her]." In its answer, Northeast admitted that it provided Ms. Casady with liability protection, but denied that it was obligated to provide uninsured motorist protection and coverage for her. Northeast affirmatively asserted that it was "immune from the statutes mandating automobile insurance coverage as provide[d] for in Chapter 303 RSMo."

Northeast filed several motions to dismiss, alleging in one motion that Ms. Casady's petition should be dismissed because it failed to state a claim upon which relief could be granted. Both sides moved for summary judgment. In her motion for summary judgment, Ms. Casady alleged in part that Northeast provided automobile liability coverage to Ms. Casady through self-insurance, and that Northeast was obligated as a matter of law to furnish uninsured motorist coverage to her. After a hearing on the motions, the trial court overruled Northeast's motions to dismiss and motion for summary judgment, sustained Ms. Casady's motion for summary judgment, and entered judgment for Ms. Casady and against Northeast in the amount of $25,000.[2] The trial court found *inter alia* that Northeast "was a self-insurer under the law and facts of this case through the actions of the State, acting as [Northeast's] agent and upon [Northeast's] behalf in the operation of the State Legal Expense Fund." The trial court found further that, by its self-insurance under the State Legal Expense Fund, Northeast was required to provide uninsured motorist coverage for the benefit of Ms. Casady. Northeast now appeals the judgment of the trial court.

As its first point on appeal, Northeast argues that the trial court erred in granting summary judgment in favor of Ms. Casady and in overruling Northeast's motions to dismiss and for summary judgment. Northeast claims that it was not required to pay uninsured motorist benefits to Ms. Casady because it was under no contractual or statutory obligation to pay those benefits.

The standard for appellate review of a summary judgment is de novo. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). This court's criteria for ascertaining the propriety of summary judgment are the same as those used by the trial court when determining the propriety of sustaining the motion initially. *Id.* Summary judgment is appropriate if the motion and response thereto "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.-04(c)(3). "The key to summary judgment is the undisputed right to judgment as a matter of law...." *ITT,* 854 S.W.2d at 380.

■ Ms. Casady did not contend that Northeast was obligated by a contract of insurance to provide uninsured motorist benefits; rather, she maintained that Northeast

Ms. Casady also received $20,693.78 in workers' compensation benefits from the State in connection with this accident.

**2.** Ms. Casady had previously filed suit against Ronda M. Brown and had received a default judgment against Ms. Brown in the amount of $100,000. Although it noted the amount of that judgment, the trial court found that Northeast's obligation to Ms. Casady was limited under the Uninsured Motorist Act to $25,000.

was required by statute to provide those benefits. Vital to the determination of whether the grant of summary judgment in favor of Ms. Casady was appropriate, then, is the determination of whether Northeast was statutorily obligated to provide uninsured motorist coverage to Ms. Casady.

Ms. Casady alleged in a memorandum in support of her motion for summary judgment that Northeast was required to provide uninsured motorist coverage for her by §§ 34.-260, RSMo 1986,[3] 105.711, 379.203 and 537.-600. Section 379.203 requires that all automobile liability insurance policies issued in Missouri include uninsured motorist coverage. However, as the trial court noted, both parties in the instant case conceded that there was no automobile liability insurance policy involved in this case. Furthermore, the eastern district of this court has previously held that § 303.350 exempts political subdivisions of the State of Missouri such as Northeast from the provisions of Chapter 303 requiring insurance or self-insurance and, therefore, from the mandate to provide uninsured motorist coverage of § 379.203. *Clayton v. Bi–State Dev. Agency*, 856 S.W.2d 386, 387 (Mo.App.1993).

Ms. Casady contends that *Clayton* does not resolve the issue of whether Northeast is required by law to provide uninsured motorist benefits to her because, she alleges, the court in *Clayton* did not consider the "financial responsibility requirements" of §§ 34.-260, 105.711, and 537.600. Ms. Casady contends that § 34.260 requires Northeast to either procure automobile liability insurance

or self-insure against such risks. Ms. Casady maintains that because Northeast had not obtained a liability insurance policy, it was required to self-insure and did in fact self-insure through the State Legal Expense Fund, §§ 105.711–.726. Citing *Heavens v. Laclede Gas Co.*, 755 S.W.2d 331 (Mo.App. 1988), Ms. Casady argues that by self-insuring, Northeast was bound by the uninsured motorist requirement of § 379.203.[4] Ms. Casady asserts that the legislature recognized Northeast's financial responsibility when it enacted §§ 537.600 and 537.610.[5]

Section 34.260 provides in pertinent part:

**34.260. State-controlled motor vehicles, aircraft and marine vessels, liability insurance for operators of to be provided.**—The commissioner of administration *may* procure on the basis of competitive bids under the provisions of this chapter, motor vehicle, aircraft, and marine liability insurance covering the operation of state-controlled motor vehicles, aircraft, and marine vessels by state employees, members of the Missouri national guard, or agents in the course of their employment, military duties, or the scope of their agency, or for dangerous conditions of property as defined in section 537.600, RSMo; provided, however, that in lieu of procuring insurance to cover such risks, the commissioner *may* determine that the state shall self-insure against all or any portion of such risks.

(Emphasis added). When construing a statute, the fundamental role of the court is "to

3. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise indicated. Although §§ 105.711, 379.203 and 537.600 have been amended since their publication in RSMo 1986, this court will refer to RSMo 1986 for the versions of those statutes in effect at the time of Ms. Casady's accident on January 13, 1988.

4. In *Heavens*, the court of appeals held that an employer self-insured under §§ 303.160 and 303.220 was required to furnish uninsured motorist coverage to its employees who operate company-owned vehicles in the course of their employment. *Heavens*, 755 S.W.2d at 333. The court of appeals found that this obligation stemmed from § 303.160.1(4), which provides that a statutory self-insurer's certificate of self-insurance must be supplemented by the self-in-

surer's agreement to "pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer." *Id.* at 332. The court of appeals in *Heavens* stated that "[s]ince a self-insurer agrees to pay as if it had a vehicle liability policy, and any vehicle liability policy would have included uninsured motorist protection [under § 379.203], a self-insurer agrees to be liable to the drivers of its vehicles in uninsured motorist situations." *Id.* at 332–33.

5. Section 537.610 was amended after its publication in RSMo 1986, but this court will refer to the RSMo 1986 version of the statute in effect at the time of Ms. Casady's accident on January 13, 1988.

give effect to the purpose of its enactment and the evident legislative intent." *AT & T v. Wallemann*, 827 S.W.2d 217, 223 (Mo.App. 1992). The intent of the legislature is to be determined by considering the plain and ordinary meaning of the words in the statute. *Jones v. Director of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992). "The legislature is presumed to have intended what the statute says and if the language is clear and unambiguous there is no room for construction." *Brown v. Melahn*, 824 S.W.2d 930, 933 (Mo. App.1992). Assuming that the legislature intended a logical result, courts must give effect to statutes as they are written. *Id.*

The plain language of § 34.260 is permissive; the commissioner "may" procure liability insurance, or, in lieu of obtaining insurance, "may" self-insure. By this language it appears the commissioner also has a third option. The commissioner may choose to neither purchase insurance nor self-insure.

The last sentence of § 34.260 contemplates this third option, as it specifically states:

In the other situations specified in this section, and in such other situations of tort liability for which insurance or a self-insurance plan is obtained or provided, sovereign immunity is waived to the maximum amount of, and for the purposes covered by, such policy of insurance or self-insurance plan, *provided that sovereign immunity in instances other than those specified in subdivisions (1) and (2) of section 537.600, RSMo, shall be retained in the event the public entity elects not to procure insurance or to implement a self-insurance plan* under the provisions of sections 537.620 to 537.650, RSMo.

(Emphasis added). Section 537.600 provides for a waiver of sovereign immunity for injuries "directly resulting from the *negligent acts or omissions by public employees* arising out of the operation of motor vehicles or motorized vehicles within the course of their employment" and for injuries caused by the condition of a public entity's property and is inapplicable here. Section 537.600.1 (emphasis added).

That the legislature did not intend to require the state to either procure motor vehicle liability insurance or self-insure is supported by the evolution of § 34.260. Prior to the 1983 amendment to the statute, § 34.260 directed that a state officer "shall procure" motor vehicle liability insurance. Section 34.260, RSMo 1978. The permissive language of § 34.260 as rewritten by the 1983 amendment is a direct departure from the formerly obligatory nature of the statute, as noted by the eastern district of this court in *Kurz v. City of St. Louis*, 716 S.W.2d 911, 912 (Mo.App.1986):

As originally enacted, § 34.260, RSMo (1978) provided: "The state director of the division of purchasing *shall* procure ... motor vehicle, air craft, and marine liability insurance ...[.]" The statute was amended in 1983 to provide that "the commissioner of administration *may* procure" insurance for vehicles ... and allowing the commissioner to self-insure the state against those perils.

(Emphasis in original). *See also Miller by and through Miller v. State*, 731 S.W.2d 885, 886 (Mo.App.1987) ("Section 34.260, RSMo 1986, allow[s] the state to get insurance or to self-insure....").[6]

The conclusion that § 34.260 does not require Northeast to procure motor vehicle liability insurance either by purchasing an insurance policy or by self-insuring is strengthened by § 34.275. Section 34.275 declares that "[n]othing in sections 34.260 to 34.275 is intended to nor shall it be construed as a waiver of sovereign immunity or the acknowledgment or creation of any liability on the part of the state for personal injury, death, or property damage."

None of the other statutes cited by Ms. Casady impose a duty on Northeast to obtain automobile liability insurance. Section 105.-711 announces the creation of the "State Legal Expense Fund," which consists of moneys set aside for the payment of "any claim or any amount required by any final judgment rendered by a court of competent

---

6. Both *Kurz* and *Miller* were overruled on other grounds by *Wilkes v. Mo. Highway and Transp.*

*Com'n*, 762 S.W.2d 27, 28–29 (Mo. banc 1988).

jurisdiction" against the State of Missouri or its agencies, officers, or employees. Section 105.711.1 and .2. Although § 105.721 states that the commissioner of administration "may, in his discretion," purchase insurance policies with moneys from the State Legal Expense Fund to protect against potential liabilities of the State or its agencies, officers, or employees, nowhere in §§ 105.711 or 105.-721 is there a requirement that the State or its political subdivisions purchase or procure automobile liability insurance or provide uninsured motor vehicle coverage to its employees. Moreover, § 105.726 expressly states that "[n]othing in sections 105.711 to 105.726 shall be construed to broaden the liability of the state of Missouri beyond the provisions of sections 537.600 to 537.610, RSMo...."

Section 537.600, as stated previously, is inapplicable here. Section 537.610.1 provides that the commissioner of administration "*may* purchase liability insurance for tort claims made against the state or the political subdivision" and waives sovereign immunity to the extent of any insurance purchased pursuant to the section or to the extent and for the purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state. (Emphasis added). Section 537.610.1 does not obligate Northeast to obtain automobile liability insurance or to pay uninsured motorist benefits to Ms. Casady.

Ms. Casady does not cite, and this court cannot find, any statute requiring Northeast to procure motor vehicle liability insurance. Not only was Northeast not required to self-insure, Northeast did not self-insure. Northeast was not a statutory self-insurer under §§ 303.160 and 303.220,[7] and the fact that any claim or amount that Northeast was required to pay by any final judgment entered against it would be paid for by the State Legal Expense Fund, § 105.711, did not render Northeast self-insured.[8] Therefore, Ms. Casady's claim that Northeast was required by *Heavens* to obtain uninsured motorist protection for her is without merit.

Because Ms. Casady cannot establish that Northeast was required to provide uninsured motorist benefits to her, Ms. Casady cannot establish an "undisputed right to judgment as a matter of law," *ITT*, 854 S.W.2d at 380, and the trial court erred in granting summary judgment in her favor. There is no basis for Ms. Casady's claim, and the trial court should have sustained Northeast's motion for summary judgment.

The judgment of the trial court is reversed, and the cause is remanded with instructions that summary judgment be awarded to Northeast.

All concur.

---

**7.** As a political subdivision of the state of Missouri, Northeast was exempt from the provisions of Chapter 303. Section 303.350. Neither party contended that Northeast had voluntarily become a statutory self-insurer, and the trial court found that Northeast was not statutorily self-insured.

**8.** Both this district and the eastern district of this court have found that the State Legal Expense Fund does not constitute insurance. *Miller*, 731 S.W.2d at 886; *Asher v. Department of Corrections*, 727 S.W.2d 155, 157 (Mo.App.1987). *Miller* and *Asher* were decided when it was believed that the applicable law governing sovereign immunity for claims arising prior to September 28, 1985, was *Bartley v. Sp. Sch. Dist. of St. Louis Cty.*, 649 S.W.2d 864 (Mo. banc 1983), and § 537.600, RSMo 1978. *Bartley* held that sovereign immunity barred all claims against the State, with the exception that sovereign immunity was waived only for torts arising out of governmental operation of motor vehicles and dan-

gerous conditions of government-owed property, and then only if the public entity had either purchased liability insurance or was self-insured. *Bartley*, 649 S.W.2d at 868, 870. The courts in *Miller* and *Asher* concluded that the State Legal Expense Fund did not satisfy the insurance requirement of *Bartley*, *Miller*, 731 S.W.2d at 886, *Asher*, 727 S.W.2d at 157, necessarily finding that the Fund was neither purchased liability insurance nor self-insurance.

The insurance requirement of *Bartley* was eliminated by the amendment of § 537.600 in 1985. Section 537.600.2. Although the Missouri Supreme Court overruled *Miller* and *Asher* to the extent that they held that the 1985 amendment of § 537.600 was not retroactive, *Oldaker v. Peters*, 817 S.W.2d 245, 249 (Mo. banc 1991); *Wilkes*, 762 S.W.2d at 28–29, the finding of *Miller* and *Asher* that the State Legal Expense Fund is not insurance has not been modified.