**Nicole R. KESTERSON and Philip M. Kesterson, Appellants,**

v.

**Gary R. WALLUT, et al.; Defendants**

**State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company, Respondents.**

No. WD 63961.

Missouri Court of Appeals, Western District.

Dec. 7, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2005.

Application for Transfer Denied April 5, 2005.

Matthew J. Padberg, St. Louis, MO, for Appellants.

James C. Spangler, Sedalia, MO, for Respondents.

Before LISA WHITE HARDWICK, P.J., ROBERT G. ULRICH and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Ms. Nicole Kesterson, a Missouri state employee, was injured in a car accident when she accompanied her boss, Mr. Gary Wallut, on a work-related trip. Ms. Kesterson and her husband, Mr. Phillip Kesterson, sued State Farm Automobile Insurance Company, seeking recovery under their uninsured motorist provision. State Farm moved for summary judgment on two grounds. It claimed that Mr. Wallut was insured because he was covered by the Missouri State Legal Expense Fund (Fund) and it claimed that even if he was uninsured, the Kestersons were not legally entitled to recover from him because he was immune from suit under the workers' compensation law. The trial court granted State Farm's motion and the Kestersons appealed. We hold that the Fund is not insurance but that because workers' compensation immunity is a substantive limitation on the Kestersons' right to sue Mr. Wallut, they are not legally entitled to recover from him. The judgment of the trial court is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

We have already dealt with a portion of the issues in this case in *Kesterson v. Wallut,* 116 S.W.3d 590 (Mo.App. W.D. 2003) (*Kesterson I*). We recap only the necessary facts for this opinion; *Kesterson I* can be referenced for a more extensive discussion of the facts in this case.

On December 30, 1998, Ms. Kesterson accompanied her direct supervisor, Mr. Wallut, on a drive from Sedalia, Missouri, to Kansas City, Missouri. The Missouri Department of Natural Resources employed both Ms. Kesterson and Mr. Wallut, and it owned the vehicle being driven. The weather was inclement and worsened during the trip, with a build-up on the road of both snow and ice. At some point, Mr. Wallut lost control of the vehicle and it crossed into oncoming traffic, where it was struck by a truck. Ms. Kesterson sustained severe injuries, including a closed head injury, a fractured skull, and injuries to her neck, shoulders, and back. As these injuries occurred in the course and scope of Mr. Wallut and Ms. Kesterson's employment, Ms. Kesterson applied for and received workers' compensation benefits for her injuries.

The Kestersons then brought the lawsuit that brings them before our court. In their initial petition, they named only Mr. Wallut, seeking recovery for Ms. Kesterson's injuries and Mr. Kesterson's loss of consortium due to Mr. Wallut's negligence in driving the vehicle. They amended their petition several times, with the final petition including State Farm as a defendant.[1] The Kestersons brought two counts seeking recovery pursuant to the uninsured motorist provisions in their policies with State Farm, alleging that Mr. Wallut was an uninsured driver and that his car was uninsured. They also brought two counts under their uninsured motorist coverage alleging that Ms. Kesterson was injured by the negligence of a phantom driver who bumped Mr. Wallut and, therefore, precipitated the accident.

The State Farm uninsured motorist provisions provide that:

> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *unin-*

---

**1.** *See Kesterson I,* 116 S.W.3d at 593, for a detailed discussion of the various amended petitions.

*sured motor vehicle.* The *bodily injury* must be sustained by an *insured* and caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle.*

*Uninsured Motor Vehicle*—means:

1. a land motor vehicle, the ownership, maintenance or use of which is:

a. not insured or bonded for bodily injury liability at the time of the accident; . . . .

An *uninsured motor vehicle* does not include a land motor vehicle: . . .

3. owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law or any similar law . . . .

Mr. Wallut filed various motions to dismiss for lack of subject matter jurisdiction. His last motion relied on *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620 (Mo. banc 2002). In *Taylor,* the Supreme Court held that a co-employee is immune from suit and workers' compensation is the only remedy when the co-employee's negligence amounted to only a breach of the employer's duty to provide a safe workplace. *Id.* at 622–23.

State Farm filed a counterclaim, seeking a declaration that the uninsured motorist provisions did not apply because Mr. Wallut was not an uninsured motorist because he was covered by the Fund.[2] State Farm filed a motion for summary judgment on its declaratory judgment action, alleging that Mr. Wallut was driving a state-owned vehicle and was not an uninsured motorist because the Fund covered liability claims. After *Taylor* was handed down, State Farm amended its summary judgment mo-

tion to include an argument that if Mr. Wallut was immune and, therefore, had no legal liability, then the uninsured motorist coverage did not apply because the Kestersons were not "legally entitled to collect" from Mr. Wallut.

The trial court granted Mr. Wallut's motion to dismiss for lack of subject matter jurisdiction under *Taylor* and granted State Farm's summary judgment motion on the Kestersons' uninsured motorist claim for Mr. Wallut, although it did not state the grounds for granting the motion. The trial court made no ruling on the Kestersons' uninsured motorist claim for the phantom driver. The Kestersons appealed and in *Kesterson I* we affirmed the dismissal of the claims against Mr. Wallut for lack of subject matter jurisdiction because he was immune from suit under *Taylor.* 116 S.W.3d at 595–96. Because the trial court did not deal with the Kestersons' claim for the phantom driver, the decision with respect to State Farm was not a final judgment and we dismissed that point. *Id.* at 598.

The Kestersons dismissed their claim against State Farm for the phantom driver and now appeal the grant of summary judgment in favor of State Farm with respect to uninsured motorist coverage for Mr. Wallut's actions. The Kestersons bring one point on appeal. They claim that the trial court erred in granting State Farm summary judgment because Mr. Wallut was uninsured and because they are legally entitled to recover from him.

## II. Standard of Review

The trial court shall enter summary judgment only if "the motion, the re-

---

**2.** All state employees who drive state-owned vehicles receive a pamphlet that states:

Liability to other persons (bodily injury and property damage) due to employee negligence in the operation of a state vehicle will be covered by the state provided the employee was operating the vehicle while conducting **official business** within the scope of their employment.

This coverage is provided by the Fund.

sponse, [and] the reply ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6).[3] The appellate court reviews the grant of summary judgment essentially de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, and the non-movant is given the benefit of all reasonable inferences from the record. *Id.*

 The moving party's entitlement to judgment as a matter of law revolves to a great extent around whether that party is the claimant or the defending party. *Id.* at 381. The claimant is the party "seeking to recover," and the defending party is the party "against whom a claim ... is asserted." Rule 74.04(a) & (b). Although State Farm filed its motion for summary judgment on the basis of its counterclaim for a declaratory judgment, State Farm is actually the defending party. As we said in *Kesterson I*, State Farm was simply asserting the affirmative defense of no coverage. 116 S.W.3d at 597. As the defending party, State Farm is not required to controvert each element of the Kestersons' claims in order to establish its right to summary judgment. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. Instead, State Farm can establish its right to judgment by showing (1) facts that negate any one of the Kestersons' elements; (2) that the Kestersons, after an adequate period of discovery, have not been able to produce, and will not be able to produce,

evidence sufficient to allow the trier of fact to find the existence of any one of their elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support State Farm's properly-pleaded affirmative defense. *Id.* State Farm relied on the third method by asserting the affirmative defense of no coverage.

To prevent summary judgment, the Kestersons need to show that there is a genuine dispute as to the facts underlying State Farm's right to judgment on the grounds of lack of coverage, i.e., that Mr. Wallut is arguably uninsured and that they are legally entitled to collect from him. *See id.*

 Although we do not know the reasons that the trial court granted State Farm's summary judgment motion, we will affirm a grant of summary judgment if the decision is correct "under any theory supported by the record developed below and presented on appeal." *Victory Hills Ltd. P'ship. I v. NationsBank, N.A.*, 28 S.W.3d 322, 327 (Mo.App. W.D.2000). "If the trial court's judgment does not specify the basis upon which summary judgment was granted, we will uphold the decision if it was appropriate under any theory." *Horneyer v. City of Springfield*, 98 S.W.3d 637, 639 (Mo.App. S.D.2003).

### III. LEGAL ANALYSIS

The Kestersons' point on appeal really breaks down into two separate points: Mr. Wallut was uninsured and the Kestersons are legally entitled to collect from Mr. Wallut even though he has immunity from suit under *Taylor*.[4]

---

**3.** Unless otherwise indicated, all rules refer to Missouri Court Rules (2004).

**4.** The Kestersons also mention that State Farm claimed in the trial court that under the terms of its policy it would never have to pay the Kestersons because any amount it owed

would be set off by money the Kestersons received elsewhere. As the Fund would pay any judgment in full, there would be nothing left for State Farm to pay. State Farm does not discuss this argument on appeal, and based on our resolution of the Kestersons' claims, we need not consider it.

## A. Mr. Wallut was uninsured

█ Under section 537.610.1,[5] the commissioner of administration may purchase liability insurance for tort claims, but is not required to do so. Further, under section 105.1070,

[t]he commissioner of administration may procure under the provisions of chapter 34, RSMo, motor vehicle, ... liability insurance covering the operation of state-controlled motor vehicles, ... by state employees, ... provided, however, that in lieu of procuring insurance to cover such risks, the commissioner may determine that the state shall self-insure or assume all or any portion of such risks.

In this case, we must determine whether the Fund constitutes a type of self-insurance, as State Farm claims it does, or is not insurance at all, merely how the state has assumed any risks, as the Kestersons claim. There is no suggestion that the state has otherwise procured liability insurance. If the Fund is insurance, then Mr. Wallut was insured and State Farm was properly granted summary judgment because its uninsured motorist coverage provisions do not apply. But if Mr. Wallut was not insured, then he is an uninsured motorist and the uninsured motorist provisions appear to apply, although we must then consider the second part of the point relied on. To determine what the Fund is, we look at both the statutory language itself and the case law considering the Fund.

The Fund is created by section 105.711, which says:

1. There is hereby created a "State Legal Expense Fund" which shall consist of moneys appropriated to the fund by the general assembly and moneys otherwise credited to the fund pursuant to section 105.716.

2. Moneys in the state legal expense fund shall be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against:

(1) The state of Missouri, or any agency of the state, pursuant to section 536.050 or 536.087, RSMo, or section 537.600, RSMo;

(2) Any officer or employee of the state of Missouri or any agency of the state....

5. Except as provided in subsection 3 of this section, ... the aggregate of payments from the state legal expense fund and from any policy of insurance procured pursuant to the provisions of section 105.721 shall not exceed the limits of liability as provided in sections 537.600 to 537.610, RSMo. No payment shall be made from the state legal expense fund or any policy of insurance procured with state funds pursuant to section 105.721 unless and until the benefits provided to pay the claim by any other policy of liability insurance have been exhausted.

The final piece of the pertinent statutory puzzle comes from section 105.721.1, which says:

The commissioner of administration may, in his discretion, direct that any or all of the moneys appropriated to the state legal expense fund be expended to procure one or more policies of insurance to insure against all or any portion of the potential liabilities of the state of Missouri or its agencies, officers, and employees.

█ When interpreting statutes, we must ascertain the intent of the legislature, giving the words their plain and ordinary

5. Unless otherwise indicated, all statutory references are to RSMo.2000.

meaning. *Ozark Wholesale Beverage Co. v. Supervisor of Liquor Control*, 80 S.W.3d 491, 497 (Mo.App. W.D.2002). Where the language is clear and unambiguous, we do not construe the statute; we apply it based on its clear language. *See Dorsey v. State*, 115 S.W.3d 842, 844 (Mo. banc 2003).

When looking at the language of the various statutes together, it appears that the Fund is not insurance. In construing a statute, all of the provisions should be harmonized if reasonably possible. *Hemann v. Camolaur, Inc.*, 127 S.W.3d 706, 713 (Mo.App. W.D.2004). "Related statutes are also relevant to further clarify the meaning of a statute." *State v. Blocker*, 133 S.W.3d 502, 504 (Mo. banc 2004). Section 105.1070 says that the state may procure insurance, self-insure, or assume all of the risks. Because section 105.1070 lists both self-insurance and assuming all risks as two separate options, we find it unreasonable for State Farm to claim that the assumption of all risks means that the state is self-insured. Section 105.711 creates the Fund, which by its language appears to only be a means of assuming the risk—"[m]oneys ... shall be available for the payment of any claim or any amount required by any final judgment"—not to be an insurance policy. And section 105.721 says that the commissioner may use the Fund to purchase insurance, which again suggests that the Fund is not insurance itself.

Although the statutes are fairly clear, we also consider the case law that has developed construing the Fund.

The Kestersons rely on *Casady v. Board of Governors of Northeast Missouri State University*, 875 S.W.2d 909 (Mo.App. W.D.1994), to argue that the Fund is not insurance. In *Casady*, Ms. Casady was an employee of the state and while driving, within the course and scope of her employment, in a vehicle owned by Northeast,[6] she was injured by an uninsured driver in an automobile accident. *Id.* at 910. Ms. Casady demanded that Northeast provide uninsured motorist coverage to her because it provided liability protection to her through the Fund. *Id.* at 911. She was told that the State of Missouri is uninsured for automobile liability, but that all costs of claims are paid out of the Fund. *Id.* The trial court found that Northeast was a self-insurer through the operation of the Fund and, as such, was required to provide uninsured motorist coverage. *Id.*

On appeal, we determined that the vital question was whether Northeast was statutorily required to provide uninsured motorist coverage. *Id.* at 912. Ms. Casady claimed that section 34.260 RSMo.1986[7] required Northeast to either procure automobile liability insurance or self-insure against such risks. *Id.* Our court determined that the plain language of section 34.260 was permissive: the commissioner may procure insurance, may self-insure, or may choose to do neither. *Id.* at 913. We then considered whether the Fund imposed a duty on Northeast to obtain automobile liability insurance. *Id.* We noted that section 105.721 states that the commissioner may purchase insurance policies

---

**6.** Now Truman State University.

**7.** Section 34.260 said, in pertinent part:
[t]he commissioner of administration may procure on the basis of competitive bids under the provisions of this chapter, motor vehicle, ... liability insurance covering the operation of state-controlled motor vehicles, ... by state employees, ... provided, however, that in lieu of procuring insurance to cover such risks, the commissioner may determine that the state shall self-insure against all or any portion of such risks. This section was changed in 1995 to section 105.1070, quoted above, with only a few minor changes in the language of the statute when it was given the new section number.

with the money from the Fund, but that neither sections 105.721 nor 105.711 required the state to procure insurance or provide uninsured motorist coverage. *Id.* at 914. We held that Northeast was not self-insured. *Id.* We specifically stated that the fact that any amount that Northeast was required to pay would be paid by the Fund did not make Northeast self-insured and noted that both this court and the eastern district had previously found that the Fund does not constitute insurance.[8] *Id.* at 914 & n. 8.

As the Kestersons correctly state, under *Casady* the Fund is not insurance. But State Farm offers three arguments to show that *Casady* is not controlling. It first claims that *Casady* involved a claim by a state employee for uninsured motorist coverage, so it does not answer any questions with respect to a third-party liability claim, such as we have here. But *Casady* does not limit its decision based on the status of the appellant; it clearly states that the Fund is not insurance. So this first distinction is irrelevant.

State Farm next focuses on the fact that *Casady* deals with section 34.260 RSMo. 1986 and that the section is now 105.1070 and it contains different language. The only language change that really matters in this case is that instead of saying that in lieu of procuring insurance the commissioner may "determine that the state shall self-insure against all or any portion of such risks," § 34.260 RSMo.1986, the statute now says that in lieu of procuring insurance the commissioner may "deter-

mine that the state shall self-insure or assume all or any portion of such risks." § 105.1070. Although no court has considered the impact of this new language, we see no reason that the analysis in *Casady* should not still apply. The statute is still permissive; it allows the commissioner to procure insurance, self-insure, assume all the risk, or do nothing. Further, allowing the commissioner to decide that the state will assume the risk, obviously through the Fund, does not mean that the Fund is insurance; it simply provides a source to pay for that assumed risk. The change in the language alone is not enough to lead us to decide that the *Casady* court's reiteration that the Fund is not insurance is no longer applicable.

State Farm, however, presents one more argument. It claims that *Dixon v. Holden*, 923 S.W.2d 370 (Mo.App. W.D.1996), changes *Casady* by holding that the Fund is insurance. In *Dixon*, Mr. Dixon, a former employee of the Missouri State Highway Patrol, won a federal suit against two former co-employees. *Id.* at 373. He brought suit in Missouri to collect on his federal judgment from the Fund and was granted summary judgment in his favor. *Id.* The state appealed, claiming *inter alia*, that because Mr. Dixon was a judgment creditor, he had no standing to invoke the Fund. *Id.* at 374. The pertinent part of the *Dixon* decision decided whether the Fund operated as indemnification or insurance. *Id.* at 375–78.

This court first considered cases from other states that found that similar funds

<hr>

8. The *Casady* court was referring to *Miller v. State*, 731 S.W.2d 885, 886 (Mo.App. E.D. 1987) (the state had no liability insurance because the Fund does not satisfy the insurance requirement), and to *Asher v. Department of Corrections & Human Resources*, 727 S.W.2d 155, 157 (Mo.App. W.D.1987) (the injured party, who claimed that sovereign immunity was waived because the state had

liability insurance, did not meet the insurance requirement by recourse to the Fund). Both of these cases were partially overruled on other grounds by *Wilkes v. Missouri Highway & Transportation Commission*, 762 S.W.2d 27, 28–29 (Mo. banc 1988), but, as the *Casady* court noted, their finding that the Fund is not insurance was not modified.

were indemnification. *Id.* at 375–76. In those cases, the courts found that the purpose of the statute was to benefit the state employee, not the judgment creditor, so only the employee could request payment from the fund as indemnification for whatever judgment it had to pay. *Id.* at 376. This court then considered cases from other states that found that similar funds were insurance. *Id.* at 376–77. One court found that "indemnify" should not be used in the technical and legalistic sense; the state should just pay judgments against employees committed in the performance of their duties. *Id.* at 377 (citing *City of Memphis v. Roberts,* 528 S.W.2d 201, 205–06 (Tenn.1975)). That court "recoil[ed]" at the suggestion that a policeman or fireman would have to pay for a judgment first and, only then, be able to recover from the fund, instead of just having the fund pay the claim directly. *Id.* (citing *Roberts,* 528 S.W.2d at 205). Another court found that the fund allowed " 'a direct action against the indemnitor by the person in whose favor a judgment against the indemnitee was entered.' " *Dixon,* 923 S.W.2d at 377 (citing *Bell v. City of Milwaukee,* 536 F.Supp. 462, 476 (E.D.Wis.1982) (declined to follow on other grounds by *Olson v. Connerly,* 156 Wis.2d 488, 457 N.W.2d 479, 484 n. 13 (1990))) And another court said that the statute is analogous to insurance. *Id.* (citing *Libercent v. Aldrich,* 149 Vt. 76, 539 A.2d 981 (1987)).

This court found that several aspects of the Fund "lead to the conclusion that the law is insurance, or not strictly indemnity." *Id.* The court decided that this is really a policy question. *Id.* at 378. The court held that it would not read into a statute that is meant to protect and help defend and pay judgments against its employees a rule that the state only has to pay the amount that the employee could afford to pay to the injured party. *Id.* It also found that there was no rule that the state employee must first pay the judgment to establish the state's liability. *Id.* The court said that the better policy is to allow the judgment creditor to seek satisfaction and have the state pay the judgment, either through self-insurance or through a policy procured for this purpose. *Id.* It said that if the true intent of the Fund is to protect state employees, that intent would be defeated if the employee had to pay before the Fund was required to pay anything; the Fund represents the state's choice to defend employees and pay any judgments against them. *Id.*

State Farm reads this case as holding that the Fund is insurance for state employees. In fact, our court has twice since relied on *Dixon* in discussing the Fund. *See Betts–Lucas v. Hartmann,* 87 S.W.3d 310, 319 (Mo.App. W.D.2002) ("The central case interpreting the Legal Expense Fund statutes is *Dixon* . . . ."); *Cottey v. Schmitter,* 24 S.W.3d 126, 129 n. 3 (Mo. App. W.D.2000) (citing *Dixon* when stating that the statutory scheme of the Fund is one of insurance rather than indemnity). But it should be noted that the *Betts–Lucas* court said that *Dixon* made several significant holdings, but did not say that a finding that the Fund was insurance was one of them. 87 S.W.3d at 320.

The Kestersons claim that *Dixon* does not apply to this case. They believe that because *Dixon* is only about whether a judgment creditor has standing to access the Fund, it is not similar enough to this case to be helpful. They state that our court merely decided that the Fund was *more like* insurance than indemnity with respect to paying judgment creditors who have a claim against state employees. They note that *Dixon* did not expressly state that the Fund is insurance. Perhaps more important, the Kestersons note that *Dixon* did not overrule or modify *Casady,* which was decided only two years earlier.

In fact, *Dixon* did not even mention *Casady*, let alone discuss how its decision related to *Casady*.

We hold that both *Casady* and *Dixon* are still good law and in full force. We believe that *Dixon* did not mention *Casady*, and, therefore, did not overrule it, because *Dixon* was dealing with a different issue. The *Dixon* court was only concerned with how the Fund makes its payments, not with whether the state is actually insured, which was the concern in *Casady* and is the issue in this case. There are very good policy reasons for treating the Fund more like an insurance policy than an indemnity statute with respect to how payments from the Fund should be made, and *Dixon* clearly articulates those policy reasons. And the cases relied on by *Dixon* for that finding could be read as creating more of a hybrid between indemnity and insurance. They use both terms and, as in *Dixon*, are most interested in making sure that judgments are just paid by the state without including the employee in the payment. In fact, *Dixon* never clearly states what the Fund is, it merely says that the Fund "is insurance, or not strictly indemnity." 923 S.W.2d at 377.

*Casady*, on the other hand, clearly states that the Fund is not insurance. Further, its decision on that point is not limited to its facts. The fact that *Dixon* held that the Fund is *more like* an insurance policy does not mean that it held that the Fund *is* an insurance policy. No case has said that the Fund actually makes the state self-insured. So *Dixon* has not changed *Casady's* ruling that the Fund is not insurance.

Moreover, when coupling the language of the statutes with *Casady*, the Fund clearly is not insurance. As mentioned above, *Casady* applies to what is now section 105.1070; the language change from section 34.260 RSMo.1986 is negligible. As such, the state still has a choice to procure insurance, self-insure, assume all of the risks, or do nothing at all. And *Dixon* does not change that. Further, the other statutes that *Casady* considered, sections 105.711 and 105.721, have not changed. And our own analysis of the language of the statutes leads us to conclude that the Fund is not insurance.

Because the Fund is not insurance, the state is uninsured and, therefore, so is Mr. Wallut. We must, therefore, consider the rest of the point relied on: whether or not the Kestersons are legally entitled to recover from Mr. Wallut in spite of the fact that he is immune from suit.

**B. The Kestersons are not legally entitled to collect from Mr. Wallut**

State Farm maintains that because Mr. Wallut is immune from suit, the Kestersons are not legally entitled to collect from him as required by the uninsured motorist policies. Therefore, even if Mr. Wallut was uninsured, the Kestersons' claims for uninsured motorist benefits were properly rejected. The Kestersons argue that Mr. Wallut's immunity does not mean that they are not legally entitled to collect from him.

State Farm asserts that Missouri law is clear about when a party may make a claim under uninsured motorist coverage and claims that, under that law, the Kestersons may not make such a claim here. The Kestersons claim that because no Missouri court has decided whether a tortfeasor's immunity destroys an insured's right to collect, we must look to decisions from other states, which are split on this issue, to decide whether or not the Kestersons are entitled to collect. Although Missouri has not dealt with this precise issue, the case law has established a clear rule for when an insured is legally entitled to collect from an uninsured motorist. We can

apply that rule of law to this case, making it unnecessary to look at decisions from other states.

The Missouri Supreme Court interpreted the requirement that an insured be "legally entitled to recover"[9] from the uninsured motorist in *Oates v. Safeco Insurance Company of America,* 583 S.W.2d 713 (Mo. banc 1979). In *Oates,* Mr. Oates was in an automobile collision and sued Mr. Coad, the other driver. Mr. Coad filed a counterclaim against Mr. Oates. *Id.* at 714. Mr. Oates also filed suit in the city of St. Louis against Safeco on the uninsured motorist provision in his insurance policy with Safeco. *Id.* Mr. Oates then dismissed his cause of action against Mr. Coad without prejudice. *Id.* Mr. Coad's counterclaim resulted in a judgment in his favor. *Id.* at 715. Safeco claimed the defenses of res judicata and collateral estoppel against Mr. Oates based on the resolution of Mr. Coad's claim. *Id.* The trial court granted Safeco's motion to dismiss on the grounds that Mr. Oates was collaterally estopped. *Id.*

The Supreme Court addressed whether Mr. Oates was legally entitled to recover damages against Mr. Coad after the Oates/Coad lawsuit was completed.[10] *Id.* The court reiterated the rule that "[t]o recover under an uninsured motorist policy, the insured does not need an unsatisfied judgment against the uninsured motorist, but has the burden of proving (1) that the other motorist was uninsured, (2) that the other motorist is legally liable to the in-

sured, and (3) the amount of damages." *Id.* (internal citation omitted). The second element is equivalent to the requirement that the insured be legally entitled to recover. *Id.*

The court then considered several different cases that had decided whether an insured is barred from proceeding against his uninsured motorist carrier when he is barred from proceeding against the tortfeasor. *Id.* at 715–16; *see Crenshaw v. Great Cent. Ins. Co.,* 527 S.W.2d 1, 4 (Mo. App.1975) (not legally entitled to recover because the wrongful death statute of limitations had expired and that limitation was a necessary condition to the right to sue the tortfeasor); *Hunt v. State Farm Mut. Auto. Ins. Co.,* 560 S.W.2d 280, 282 (Mo. App.1977) (adopting the reasoning in *Crenshaw* for a similar situation); *Edwards v. State Farm Ins. Co.,* 574 S.W.2d 505, 506–07 (Mo.App.1978) (insured was legally entitled to recover from the tortfeasor even though the five year statute of limitations for tort claims had expired and the insurer, therefore, could not claim its right of subrogation against the tortfeasor); *Reese v. Preferred Risk Mut. Ins. Co.,* 457 S.W.2d 205, 206, 208–09 (Mo.App.1970) (insured's dismissal of the uninsured motorist with prejudice "was not an adjudication on the merits and did not affect the liability of the insurer to the insured and did not bar an action against the insurer"; the phrase "legally entitled to recover" is ambiguous and refers to the fault of the uninsured motorist).[11]

---

9. Although the language in the policies in this case is "legally entitled to collect" instead of "legally entitled to recover," we agree with the parties that there is no legal distinction between these phrases.

10. The other issues resolved in *Oates* are not relevant to the resolution of this case.

11. The Kestersons rely heavily on *Reese* to support their argument that they only need to

show that Mr. Wallut, the uninsured, was at fault for the accident. State Farm claims that *Oates* limits this holding. We think that this debate is meaningless. The Kestersons interpretation of *Reese* is correct and *Oates* did not limit it. But *Oates* did explain the differences between cases like *Reese* and *Crenshaw,* and it is that resultant holding that directs our decision in this case.

The court then concluded that under all of these decisions, "the insured is 'legally entitled to recover' if his action is not barred by a substantive limitation at the time the action is brought against the uninsured motorist carrier (*Crenshaw, supra*) and he can show (1) causal negligence or fault on the part of the uninsured motorist, (2) the absence of contributory negligence where submitted, and (3) resulting damage to himself (*Reese, supra*)." *Oates,* 583 S.W.2d at 716–17. It is this rule from *Oates* that applies to this case. Although Missouri has not specifically decided whether workers' compensation immunity prevents suit against an uninsured motorist carrier, the rule from *Oates* is a generally applicable rule and we can apply it to this situation. If Mr. Wallut's immunity under workers' compensation is a substantive limitation, then the Kestersons cannot bring this uninsured motorist claim against State Farm; if his immunity is merely procedural, then they can bring their uninsured motorist claim. Regardless, they are not required to first assert a tort claim against Mr. Wallut, nor to obtain a judgment against him. *Edwards,* 574 S.W.2d at 506; *Hollis v. Blevins,* 927 S.W.2d 558, 568 (Mo.App. S.D.1996).

The difference between procedural and substantive law is that "[p]rocedural law prescribes the method and manner of enforcing rights or obtaining redress for their invasion, while substantive law creates, defines, and regulates rights." *Messner v. Am. Union Ins. Co.,* 119 S.W.3d 642, 647 (Mo.App. S.D.2003). If the workers' compensation law is implicated, it supplants all common law rights of the employee and provides the exclusive remedy against employers for injuries covered by its provisions. *Kesterson I,* 116 S.W.3d at 595; *Taylor,* 73 S.W.3d at 621. The immunity from suit provided by workers' compensation also extends to employees of the exempt employer, although in a more limited fashion. *Taylor,* 73 S.W.3d at 621.

Workers' compensation law is clearly substantive law. As it supplants the common law, it "creates, defines, and regulates" the rights of an employee claiming an injury. Ms. Kesterson's claim for uninsured motorist coverage arises from the negligence of her co-worker, Mr. Wallut. She is barred from suing him because workers' compensation is her exclusive remedy. *Id.* at 622–23. This is a substantive limitation on her right to sue Mr. Wallut. As such, under *Oates* this is also a bar on her right to sue her uninsured motorist carrier, State Farm. She cannot show that at the time that the litigation against State Farm commenced, she was legally entitled to recover damages from Mr. Wallut because he was immune from suit, leaving her with no right to a remedy from him. *See Crenshaw,* 527 S.W.2d at 4.

## IV. CONCLUSION

Because the Fund is not insurance, Mr. Wallut was an uninsured motorist. However, Ms. Kesterson is barred from suing Mr. Wallut due to his immunity under workers' compensation law, which is a substantive limitation on her right to sue him. So under *Oates,* she was not "legally entitled to collect" from Mr. Wallut under the State Farm uninsured motorist policies. State Farm was, therefore, entitled to summary judgment in its favor. We affirm the decision of the trial court.

LISA WHITE HARDWICK, P.J. and ROBERT G. ULRICH, J. concur.